944 P.2d 1341

**In the Matter of Certain Notices of Pendency of Action and an Interlocutory Judgment and Order Recorded Against 2003 AND 2007 ALA WAI BOULEVARD, CITY AND COUNTY OF HONOLULU, State of Hawai'i (TMK Nos. (1)–2–6–015–033 and (1)–2–6–015–034)**

**GGS (HI), INC., a Hawai'i corporation, Owner/Movant-Appellant,**

v.

**NEW YORK DIAMOND, INC., a Hawai'i corporation; Toshio Masuda; and Shigeyuki Tachibana, Respondents–Appellees.**

No. 18948.

Intermediate Court of Appeals of Hawai'i.

July 28, 1997.

As Modified on Grant of Reconsideration Aug. 14, 1997.

---

J. George Hetherington and Steven B. Jacobson (Torkildson,Katz, Jossem, Fonseca, Jaffe, Moore & Hetherington), on the briefs, Honolulu, for owner/movant-appellant.

Paul Alston and Mei Nakamoto (Alston Hunt Floyd & Ing), on the brief, Honolulu, for respondent-appellee Shigeyuki Tachibana.

Tamotsu Tanaka and Eric H. Tsugawa, (Tanaka & Tsugawa), on the statement of position, Honolulu, for respondents-appellees New York Diamond, Inc. and Toshio Masuda

Before WATANABE, ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

We hold in this appeal by Owner/Movant–Appellant GGS (HI), Inc. (GGS) from the first circuit court (circuit court) February 3, 1995 order denying GGS's motion for an order expunging the lis pendens,[1] supplemental lis pendens, and stipulated judgment and order from its land court certificate of title; April 10, 1995 final judgment; and April 25, 1995 order denying GGS's motion to alter or amend the order denying GGS's motion to expunge[2]; that (1) the land court and not the circuit court has jurisdiction to expunge memoranda from a certificate of title to land court registered property (registered property)[3]; (2) Hawai'i Revised Statutes (HRS) § 501–151 (Supp.1991) pertaining to lis pendens on registered property must be strictly construed; (3) HRS § 501–151 authorizes the filing and recording of lis pendens and judgments against registered property, only for "writ[s] of entry," "actions for partition," or actions "affecting the title to real property or the use and occupation thereof or the building thereon"; (4) a non-final "stipulated judg-

---

1. In Hawai'i, the doctrine of lis pendens is codified in Hawai'i Revised Statutes (HRS) § 501–151 (Supp.1991) (land court registered property) and HRS § 634–51 (1993) (non-registered land). Although HRS § 501–151 provides for the recording of a notice of "pending action," and HRS § 634–51 provides for the recording of a "notice of pendency of action," we employ the term "lis pendens" throughout this opinion as the equivalent of a notice of pending action or notice of pendency of action. *See S. Utsunomiya Enters. v. Moomuku Country Club*, 75 Haw. 480, 487 n. 4, 866 P.2d 951, 957 n. 4 (1994).

2. GGS (HI), Inc. (GGS) only appeals this order "insofar as it may finalize the [order denying GGS's motion to expunge the lis pendens, supplemental lis pendens, and stipulated judgment and order] and/or the final judgment."

3. The appellate court has jurisdiction to order expungement in an appeal taken from a land court decision. *Matson Nav. Co. v. F.D.I.C.*, 81 Hawai'i 270, 916 P.2d 680 (1996).

ment" cannot constitute a judgment lien on real property; and (5) the stipulated judgment and order in the instant case did not constitute an equitable lien on GGS's registered property.

### I.

### A.

In March 1990, Japan E.C.O. Co., Ltd. (Japan ECO) bought certain real property located at 2003 and 2007 Ala Wai Boulevard (Ala Wai King) on Oʻahu from Osaki Hawaii, Inc. The Ala Wai King property is registered property.[4] In June 1990, Japan ECO assigned all of its interest in the Ala Wai King to E.C.O. Hawaii (ECO Hawaii).

By warranty deed dated December 6, 1990, ECO Hawaii assigned all of its interest in the Ala Wai King to New York Diamond, Inc. (N.Y. Diamond). Between September 1990 and July 1991, N.Y. Diamond incurred various expenses in connection with the eviction of tenants from and renovation and operation of the Ala Wai King.

On July 23, 1991, Japan ECO and ECO Hawaii resumed operation of the Ala Wai King, and N.Y. Diamond assigned all of its interest in the Ala Wai King back to ECO Hawaii. Subsequently, by "correction warranty deed," dated August 20, 1991, N.Y. Diamond conveyed all of its interest in the Ala Wai King back to ECO Hawaii.

On September 14, 1992, N.Y. Diamond and its president, Toshio Masuda (Masuda) filed a breach of contract lawsuit against Japan ECO, ECO Hawaii, and others "concerning the acquisition, development and use of [the] Ala Wai King." After serving their complaint, N.Y. Diamond and Masuda recorded a lis pendens on September 15, 1992 in the land court against the Ala Wai King.

On October 29, 1992, ECO Hawaii executed a general warranty deed conveying the Ala Wai King to GGS for $4 million dollars but did not record the deed in the land court until March 12, 1993.

On November 30, 1992, N.Y. Diamond and Masuda recorded a supplemental lis pendens in the land court.

On December 23, 1992, the circuit court entered a "stipulated judgment" and order in the breach of contract action. On December 24, 1992, N.Y. Diamond and Masuda recorded the stipulated judgment in the land court.

On November 18, 1993, N.Y. Diamond, Masuda, ECO Hawaii, and Japan ECO, the parties in the breach of contract action, filed a stipulation which dismissed all of the remaining claims in the lawsuit.[5]

### B.

On May 20, 1994, GGS filed motions in the breach of contract action to vacate the lis pendens, supplemental lis pendens, and stipulated judgment and order and expunge them from its certificate of title to the Ala Wai King (motion to expunge). GGS argued that "the allegations of [NY Diamond and Masuda's] complaint were and are insufficient to create any right to record" the lis pendens and supplemental lis pendens. GGS contended that HRS § 501–151 should be interpreted "restrictively," and therefore, a "lis pendens may only be recorded against [l]and [c]ourt property (1) in an action for partition of such property, (2) in an action otherwise affecting the title to such property, or (3) in an action affecting the right to use or occupy such property or buildings thereon."[6] With regard to the stipulated judgment, GGS argued that it should be vacated insofar as it entered judgment in favor of

---

**4.** *See* discussion *infra.*

**5.** All claims in the lawsuit, "including those claims asserted in the [c]omplaint and [c]ounterclaim," were "dismissed with prejudice with each party to bear its own attorneys' fees and costs." However, "any claims and interest to the extent such are asserted in the [c]omplaint and [c]ounterclaim, in and to the funds held in escrow from the sale of the Ehupua Street Property" were "dismissed without prejudice."

**6.** GGS also argued that "newly-admitted facts show that [Toshio] Masuda [ (Masuda) ] individually was never entitled to file or record notices of pendency of action, and is not entitled to continue maintaining notices of pendency of action now." This argument was not raised on appeal; therefore, we do not consider it.

Masuda individually[7] and expunged to the extent that it constituted a lien upon the property.

On June 13, 1994, N.Y. Diamond and Masuda filed a memorandum in opposition to GGS's motion contending that GGS did not have standing to attack the stipulated judgment under Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)[8]; the circuit court should enforce and support the stipulated judgment; GGS's motion was untimely; and, the lis pendens and supplemental lis pendens were both proper and valid.

On June 15, 1994, a hearing was held on GGS's motion. The circuit court determined that GGS was "not a party or legal representative of a party pursuant to [HRCP Rule 60(b)]" and therefore "lack[ed] standing to bring [the][m]otion[ ]."

On June 20, 1994, the circuit court denied GGS's motion to expunge without prejudice. On July 1, 1994, GGS filed a motion for reconsideration. On September 15, 1994, the circuit court denied GGS's motion for reconsideration and an order was filed accordingly.

## C.

### 1.

After GGS's motion for reconsideration was denied, GGS initiated a "special proceeding" to again "clear from its title [the] three improper recordings."

On September 29, 1994, GGS filed anew, its motion to expunge. GGS contended that the lis pendens and supplemental lis pendens were improperly recorded because N.Y. Diamond and Masuda's underlying action "was not the kind of action" for which a lis pendens "may be recorded against land court property." GGS also argued that the stipulated judgment and order was improperly recorded because it "was accepted for recording although it was not a final judgment or order[.]"

On October 11, 1994, N.Y. Diamond and Masuda filed a memorandum in opposition to the motion to expunge. NY Diamond and Masuda contended that the lis pendens and supplemental lis pendens were "proper and valid" and that "the stipulated judgment [was] a valid judgment lien against the Ala Wai King the priority of which relate[d] back to the [lis pendens] recorded on September 15, 1992."

NY Diamond and Masuda argued that GGS purchased the Ala Wai King subject to the terms of the stipulated judgment, and the stipulated judgment continued as a valid judgment lien on the Ala Wai King, superior and prior to the interests of GGS. Also, N.Y. Diamond and Masuda indicated that on July 19, 1994, they had assigned their interest in the stipulated judgment to Shigeyuki Tachibana (Tachibana).

On December 23, 1994, Tachibana also filed a memorandum in opposition to GGS's motion. Besides joining in N.Y. Diamond and Masuda's arguments, Tachibana contended that the stipulated judgment and order, recorded before GGS recorded its deed to the Ala Wai King, had priority over GGS's deed. Furthermore, Tachibana argued that "[h]aving accepted the interlocutory stipulated judgment and order for recordation and identifying it as an encumbrance which was superior to GGS's deed in the certificate of

---

**7.** GGS argued that the judgment was the "result of a fraud upon the [c]ourt insofar as it enter[ed] judgment for Masuda individually." GGS contended that in recent deposition testimony Masuda had admitted that contrary to the complaint and stipulated judgment it was New York Diamond, Inc. (N.Y. Diamond) alone and not him personally who incurred all the expenses and costs of operating and renovating the Ala Wai King. On appeal, GGS abandoned this argument. Consequently, we do not address it.

**8.** Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) states, in relevant part:

 **(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence, fraud, etc.**

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

title, the land court ha[d] certified the priority of Tachibana's assignor, Masuda."

On January 12, 1995, a hearing on GGS's motion was held. Following the hearing, the circuit court issued a written order on February 3, 1995, reflecting its January 12, 1995 oral ruling. The written order stated:

THIS COURT HEREBY FINDS that:

1. This [c]ourt has concurrent jurisdiction with the [l]and [c]ourt to hear this matter.

2. This matter was appropriately initiated and pursued as a[s]pecial [p]roceeding.

3. [GGS] has standing to bring the [m]otion.

4. The (a) [lis pendens] ... and (b) [supplemental lis pendens] ... may have been improvidently filed with the [l]and [c]ourt ... however, [GGS] should have sought expungement of those notices earlier and its current request to expunge the notices is untimely.

5. Regardless of the validity or invalidity of the notices of pendency of action the [s]tipulated [j]udgment and [o]rder, filed with this [c]ourt on December 23, 1992, recorded with the [o]ffice of the [a]ssistant [r]egistrar of the [l]and [c]ourt on December 24, 1992 ... and recorded with the [b]ureau of [c]onveyances on December 24, 1992 ... was properly accepted and filed by the [l]and [c]ourt and gave notice to the world that [Masuda] and [NY Diamond] held an interest that affected the [Ala Wai King] that was the subject of the action which gave rise to the [s]tipulated [j]udgment and [o]rder.

6. The [s]tipulated [j]udgment and [o]rder is a valid lien on the [Ala Wai King].

7. [GGS] acquired title to the [Ala Wai King] subject to the [s]tipulated [j]udgment and [o]rder.

As a result, the circuit court denied "[GGS's] [m]otion for [o]rder [e]xpunging [lis pendens, supplemental lis pendens, and stipulated judgment and order] from [t]itle to [r]eal [p]roperty."

2.

On January 27, 1995, GGS filed an updated land court certificate of title for the Ala Wai King. The certificate of title revealed that as of July 21, 1994, the land court had already recorded a release of the lis pendens and supplemental lis pendens.[9]

On February 9, 1995, GGS filed a motion to alter or amend the circuit court's February 3, 1995 order. GGS contended that the order should be altered to reflect that the expungement motion was "dismissed as moot" rather than "denied on the merits," "insofar as said motion sought expungement of the now-released [lis pendens and supplemental lis pendens] previously recorded on the [l]and [c]ourt [c]ertificate of [t]itle for [GGS's] property."

On February 21, 1995, N.Y. Diamond and Masuda filed a memorandum in opposition to GGS's motion to alter or amend. NY Diamond and Masuda argued that the assistant registrar of the land court had "improperly noted the release of the [lis pendens and supplemental lis pendens] on the certificate of title" and that they planned "to file a petition to the [l]and [c]ourt or take other appropriate action to correct the [c]ertificate of [t]itle to reflect the [lis pendens and supplemental lis pendens] as proper encumbrances on the subject property."

Tachibana also filed a memorandum in opposition on February 21, 1995. Tachibana argued that because GGS's motion to alter or amend was based upon evidence that was available and should have been presented prior to the hearing, i.e. the revised certificate of title, GGS's motion to alter or amend should be denied.

On April 25, 1995, the circuit court denied GGS's motion to alter or amend.

On April 10, 1995, the circuit court filed a final judgment reflecting its previously filed written order denying the motion to expunge.

9. On appeal, neither party indicates and the land court certificate of title does not reflect the exact date on which the release was recorded.

## D.

On April 28, 1995, GGS filed its notice of appeal. NY Diamond and Masuda did not file an answering brief. Instead, N.Y. Diamond and Masuda filed a statement of position which essentially states that they had assigned their interest in the stipulated judgment and order to Tachibana and thus did not retain any interest in the Ala Wai King or in the appeal. On August 14, 1995, Tachibana filed an answering brief.[10]

We examine the circuit court's February 3, 1995 order.

## II.

We agree that the circuit court had "concurrent jurisdiction with the [l]and [c]ourt" to hear the *merits* of GGS's motion to expunge and, thus, that "[t]his matter [could be] appropriately initiated and pursued as a[s]pecial [p]roceeding" in the circuit court, but we conclude that only the land court has jurisdiction to expunge memoranda from a certificate of title.

**10.** On October 8, 1996, GGS filed a letter pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(j). HRAP Rule 28(j) states, in pertinent part:

> **(j) Citation of Supplemental Authorities.** Parties may, by letter to the clerk of the court, bring to the court's attention pertinent and significant authorities published after a party's brief has been filed, but before a decision. A copy of the letter, setting forth the citations, shall be served at or before the time of filing as provided by Rule 25(b) of these rules. The letter shall provide references to either the page(s) of the brief or to a point argued orally to which the citations pertain. The letter shall, *without argument*, state the reasons for the supplemental citations. Any response shall be made promptly and shall be similarly limited.

(Emphasis added.) We point out that the letter filed by GGS went beyond the bounds of the intended scope of HRAP Rule 28(j) by including extensive argument and raising additional points. Thus, the subsequent filings, "motion for summary reversal or expedited memorandum reversal in light of Appellees' concession and abandonment of principal defense on appeal" and "supplemental memorandum in support of motion for summary reversal or expedited memorandum reversal in light of Appellees' concession and abandonment of principal defense on appeal" were inappropriately filed. On September 6, 1995, the Hawai'i Supreme Court denied GGS's motion for expedited consideration on appeal. In its subsequent motions before this court, GGS does not present any new

## A.

### 1.

As authority for initiating a special proceeding in circuit court, GGS cites 54 C.J.S. *Lis Pendens* § 24, at 411 (1987).[11] GGS states "[a]pplications to expunge notices of pendency of action 'must be made as a special proceeding' if made 'by a person not a party to the action' of which improper notice is attempted. 54 C.J.S., *Lis Pendens*, § 24, at 411 (1987)." The C.J.S. reference did not involve land court registered property.

▮▮ We concur that in the case of unregistered property, a nonparty could bring a motion to expunge an encumbrance [12] on title to real property through a special proceeding in circuit court. In the case of registered property, such a proceeding may be initiated to determine the merits of a motion to expunge but a proceeding under HRS § 501–196 (1993) is the only mechanism for accomplishing the actual expungement of memoranda from the certificate of title to regis-

or valid reason for expedited consideration. Moreover, these subsequent motions appear to be an attempt to supplement its reply brief.

**11.** The section dealing with initiating a special proceeding to bring a motion to expunge a lis pendens was miscited. The correct citation, 54 C.J.S. *Lis Pendens* § 27, at 411 (1987), refers to *In re Secured Holdings Corp.*, 88 Misc. 706, 151 N.Y.S. 422 (1915) for this proposition.

**12.** An encumbrance is

> any right or interest existing in a third person that diminishes the value of the estate to the grantee, but which is consistent with the passage of the estate to the grantee.... Stated more succinctly, an encumbrance is any burden resting either on the real estate itself, or on the title thereto, which tends to lessen the value, or interferes with its free enjoyment.

*S. Utsunomiya*, 75 Haw. at 502, 866 P.2d at 963 (citations and internal quotation marks omitted). A lis pendens is an encumbrance and furthermore,

> the term [encumbrance] is construed broadly to include not merely liens such as mortgages, judgment liens, taxes, or others to which the land may be subjected to sale for their payment, but also attachments, leases, inchoate dower rights, water rights, easements, restrictions on use, or any right in a third party which diminishes the value or limits the use of the land granted.

*Id.*

tered property.[13]

■ Hawai'i has two systems for recording title to real property. HRS Chapter 502 establishes a bureau of conveyances for recordation of interests in land. HRS Chapter 501, on the other hand, establishes a land court[14] registration system based upon the Torrens system of land title registration. "Registered land or property" refers to property which has had its title determined and certificate of title issued by the land court. The purpose of the registration system is to conclusively establish title to land through the issuance of a certificate of title:

> The fundamental purpose of registering land title under the Torrens system is "to establish an indefeasible title free from all rights or claims not registered with the registrar of title with certain unimportant exceptions to the end that any one may deal with such property with the assurance that the only rights or claims of which he [or she] need take notice are those so registered."

*In re Matson Nav. Co.*, 79 Hawai'i 56, 57 n. 1, 897 P.2d 983, 984 n. 1 (App.1995) (quoting *Akagi v. Oshita*, 33 Haw. 343, 348 (1935)). It follows, then, that

> [i]f the intent and purpose of the law pertaining to the registration of land titles is to be preserved, the integrity of certificates of title must be scrupulously observed and every subsequent purchaser of registered land who takes a certificate of title for value, except in cases of fraud to which he is a party, is entitled under the provisions of [HRS § ] 501 to hold the same free from all encumbrances except

those noted on the certificate and the statutory encumbrances enumerated.

*In re Bishop Trust Co.*, 35 Haw. 816, 825 (1941). Thus, the fundamental difference between a certificate of title issued by the land court and a recordation of title at the bureau of conveyances is that a land court certificate of title is "conclusive and unimpeachable" with regard to "all matters contained therein." *Id.*

A certificate of title, however, may be amended by the land court when "any error, omission, or mistake was made in entering a certificate or a memorandum thereon." HRS § 501–196; *see also In re Matson Nav. Co., supra.*

2.

■ Our appellate courts have recognized that the circuit court does have jurisdiction to rule on matters concerning registered property. *See In re Rice*, 68 Haw. 334, 713 P.2d 426 (1986) (holding circuit court and not land court has jurisdiction over breach of contract actions arising out of alleged breaches of agreement for sale of a leasehold interest); *Iaea v. Iaea*, 59 Haw. 648, 586 P.2d 1015 (1978) (holding circuit court had jurisdiction to entertain suit seeking to set aside deed of conveyance); *In re Kamau*, 32 Haw. 680 (1933) (holding both circuit court and land court had jurisdiction to determine if mortgage was fraudulent); *Waimea Falls Park, Inc. v. Brown*, 6 Haw.App. 83, 85 n. 5, 712 P.2d 1136, 1139 n. 5 (1985) (holding that circuit court had jurisdiction to determine owner of registered land); *see also* HRS § 603–21.5(3) (1993).[15]

> A court is established, called the land court, which shall have exclusive original jurisdiction of all applications for the registration of title to land and easements or rights in land held and possessed in fee simple within the State, with the power to hear and determine all questions arising upon such applications, and also subject to the rights of appeal under this chapter. The proceedings upon the applications shall be proceedings in rem against the land, and the decrees shall operate directly on the land and vest and establish title thereto.

**13.** HRS Chapter 507–D entitled "nonconsensual common law liens" became effective on April 22, 1996 and was subsequently amended effective June 21, 1997. This statute did not affect proceedings, such as the instant case, which had begun before its effective date. The statute purports to invest the circuit court with authority to "order the registrar to expunge the instrument purporting to create" an invalid lien. HRS § 507D–7. "Registrar" includes "registrar of the land court." HRS § 507D–2. The statute makes no mention of HRS § 501–196. Because HRS § 507D–7 was not in issue, we do not reach any question concerning the effect to be given it.

**14.** HRS § 501–1 (1993) states, in pertinent part:

**15.** HRS § 603–21.5 (1993) states, in pertinent part:

However, the circuit court does not have jurisdiction to expunge matters from a certificate of title or to order the land court to do so. *See Iaea, supra* (holding circuit court did not have jurisdiction to order expungement of deed from files and records of land court); *Kamau,* 32 Haw. at 682 (holding land court has power "to receive and to hear and determine any petition by a registered owner alleging that any error, omission or mistake was made in entering a memorandum upon a certificate of title and *of the further power,* after such hearing and determination, *to order a cancellation of the memorandum* if the facts and the law require that conclusion.") (emphases added); *In re Rosenbledt,* 24 Haw. 298, 308 (1918) ("The [land] court may remove clouds on titles and may find and decree in whom the title to any interest, legal or equitable, in land is vested, whether in the applicant or in any other person.") *overruled in part on other grounds,* 25 Haw. 561 (1920); HRS § 501–106(a)(5) (Supp.1991) ("no memorandum shall be made upon any certificate of title by the ... assistant registrar, ... except ... upon the order of the [land] court, for cause shown.")

Thus, the circuit court did not have jurisdiction to order that the lis pendens, supplemental lis pendens, or stipulated judgment and order be expunged. Rather, HRS § 501–196 sets forth the procedure for amending or altering a certificate of title:

> Any registered owner or other person in interest may at any time apply by petition to the [land] court, upon the ground that registered interests of any description, whether vested, contingent, expectant, or inchoate have terminated and ceased; ... or that any error, omission, or mistake was

The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of:
(1) Criminal offenses cognizable under the laws of the State, committed within their respective circuits or transferred to them for trial by change of venue from some other circuit court;
(2) Actions for penalties and forfeitures incurred under the laws of the State;
(3) *Civil actions and proceedings,* in addition to those listed in sections 603–21.6 [probate], 603–21.7 [non-jury cases], and 603–21.8 [appeals].
(Emphasis added.)

made in entering a certificate or any memorandum thereon[.]

■ Accordingly, while the circuit court could not expunge memoranda from GGS's certificate of title, it does appear that the circuit court had concurrent jurisdiction with the land court to determine the *validity* of the lis pendens, supplemental lis pendens, and stipulated judgment and order.

## B.

■ The circuit court, nevertheless, declined to rule upon the validity of the lis pendens and supplemental lis pendens. The circuit court found that although the lis pendens and supplemental lis pendens "may have been improvidently filed with the [l]and [c]ourt ... [GGS] should have sought expungement of those notices earlier and its current request to expunge the notices is untimely."

The warranty deed which GGS received from ECO Hawaii and recorded on March 12, 1993 did not reveal the lis pendens or supplemental lis pendens as encumbrances. The breach of contract lawsuit brought by N.Y. Diamond and Masuda was not terminated until November 18, 1993. As we have pointed out, on May 20, 1994, GGS moved to vacate and expunge the lis pendens and supplemental lis pendens and vacate the stipulated judgment and order in N.Y. Diamond and Masuda's breach of contract lawsuit. Upon denial of GGS's motion for lack of standing, GGS initiated a special proceeding refiling its motion to expunge on September 29, 1994. Under such circumstances, we do not believe that GGS's motion to expunge was untimely.[16]

16. We note that HRS § 501–196 does not expressly set a statutory time limitation for bringing a motion to expunge improperly recorded memoranda from a certificate of title. HRS § 501–196 states that if "any error, omission, or mistake was made in entering a certificate or any memorandum thereon," or if "registered interests of any description ... have terminated and ceased," a "registered owner or other person in interest" may seek "cancellation" of that certificate or memorandum "at any time." *See also Assistant Recorder of North Registry Dist. of Bristol County v. Spinelli,* 38 Mass.App.Ct. 655, 651 N.E.2d 411, 412 (1995) (holding that because the land court and the assistant recorders have a

■ In addition, there is precedent for permitting a purchaser of real property to challenge the filing of a lis pendens after the sale had taken place. In *S. Utsunomiya*, the circuit court's allowance of a purchaser's attack on the validity of a lis pendens filed in the bureau of conveyances under HRS § 634–51 was sustained even though the purchaser had closed the purchase with actual knowledge of the lis pendens. *S. Utsunomiya Enters. v. Moomuku Country Club*, 75 Haw. 480, 487–88, 866 P.2d 951, 957 (1994).[17]

### C.

Initially, it may appear that the validity of the lis pendens and supplemental lis pendens is a moot matter because a release of the lis pendens and supplemental lis pendens was recorded upon GGS's certificate of title.

■ Moot issues are not reviewed on appeal. *Wong v. Board of Regents of the Univ. of [Hawai'i]*, 62 Haw. 391, 394, 616 P.2d 201, 203 (1980) (stating a lawsuit "must remain alive throughout the course of litigation to the moment of final appellate disposition"). A case is moot if it has lost its character as a present, live controversy. *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987) (citations and internal quotation marks omitted). However, "an appeal is not moot if the case appealed has *substantial continuing collateral consequences* on the appellant." *In re Doe*, 81 Hawai'i 91, 99, 912 P.2d 588, 596 (App.1996) (citation omitted) (emphasis added).

■ In the circuit court proceedings, GGS based its motion to alter or amend upon the argument that this issue was moot. In opposition to GGS's motion to alter or amend, Tachibana's predecessors, N.Y. Diamond and Masuda, argued that the issue was not moot. NY Diamond and Masuda stated that they "intend[ed] to file a petition to [sic] the [l]and [c]ourt or take other appropriate action to correct the [c]ertificate of [t]itle to reflect the [lis pendens and supplemental lis pendens] as proper encumbrances on the subject property." In view of the fact that N.Y. Diamond, Masuda or Tachibana may petition the land court to reinstate the lis pendens and stipulated lis pendens, we believe that the issue of the validity of the lis pendens and supplemental lis pendens is not moot.[18]

---

"vital interest in maintaining the integrity of their records and in correcting errors made when documents have been accepted for registration," the assistant recorder has statutory authority to petition land court to amend certificate of title that allegedly contains error); *Laterza v. Murray*, 2 Ill.2d 219, 117 N.E.2d 779 (1954) (holding that because a recording official's clearly erroneous notation on Torrens title deed that a conveyance was subject to dower was not binding on grantee and could have been corrected by order of court, the act of the registrar in subsequently voluntarily removing the notation did not prejudice appellant).

**17.** On appeal, Shigeyuki Tachibana (Tachibana) argues for the first time that GGS's effort to expunge the stipulated judgment and order is barred by "laches or waiver." We decline to consider this argument. *See Han v. Yang*, 84 Hawai'i 162, 176–77, 931 P.2d 604, 618–19 (1997) ("The general rule is that an issue that was not raised in the lower court will not be considered on appeal. An appellate court will deviate from this rule only when justice so requires.") (brackets, citations and internal quotation marks omitted); *Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 476, 540 P.2d 978, 985 (1975) ("In determining whether to exercise discretion to hear new issues, three factors to be taken into account are whether the consideration of the issue requires additional facts; whether the resolution of the question will affect the integrity of the findings of fact of the trial court; and whether the question is of great public import.") (citation and internal quotation marks omitted).

**18.** In GGS's reply brief, GGS suggests that N.Y. Diamond and Masuda would attempt to file a petition in land court to reinstate the supplemental lis pendens because both had apparently warranted the enforceability of the "stipulated judgment" to Tachibana:

Although N.Y. Diamond and Masuda subsequently assigned their interests in the so-called "stipulated judgment" to Tachibana, their assignment included certain warranties as to the "stipulated judgment's" validity and enforceability as recorded.

Should Tachibana seek or threaten to seek relief from N.Y. Diamond and Masuda on their warranties, either because the "stipulated judgment" is expunged or because of the likelihood of its expungement, N.Y. Diamond and Masuda would doubtlessly file the threatened [l]and [c]ourt petition to reinstate the supplemented lis pendens in hopes of re-securing the judgment, given their previously-expressed view that [the stipulated judgment] can relate back to a previously-recorded lis pendens.

### D.

### 1.

In that regard, we believe that the lis pendens and supplemental lis pendens were invalid.

HRS § 501–151 states in relevant part:

**§ 501–151 Pending actions, judgments; recording of, notice.** *No writ of entry, action for partition, or any action affecting the title to real property or the use and occupation thereof or the buildings thereon,* ... shall have any effect upon registered land as against persons other than the parties thereto, unless a full memorandum thereof, containing also a reference to the number of certificate of title of the land affected is filed or recorded and registered.

. . . .

Notice of the pendency of an action in a United States District Court, as well as a court of the State of Hawaii [Hawai'i], may be recorded.

(Emphasis added.) Thus, HRS § 501–151 authorizes the recording of a lis pendens against registered property, but only for actions for "writ[s] of entry," "actions for partition," or actions "affecting the title to real property or the use and occupation thereof or the buildings thereon."

*S. Utsunomiya* is instructive in construing HRS § 501–151.[19] *S. Utsunomiya* dealt with a lis pendens filed against unregistered land pursuant to HRS § 634–51 (1993). There, the Hawai'i Supreme Court in construing HRS § 634–51 reviewed the basis of the common law lis pendens doctrine:

At common law under the doctrine of lis pendens the mere existence of a lawsuit affecting real property was considered to impart constructive notice that anyone who acquired an interest in the property after the suit was filed would be bound by any judgment in that suit.... Courts and commentators acknowledged the doctrine's potentially harsh impact on innocent purchasers, but they willingly accepted this as a necessary concomitant to preserving the judicial power. In this regard, the doctrine of lis pendens protected a plaintiff from having his or her claim to the property defeated by the subsequent alienation of the property to a bona fide purchaser during the course of the lawsuit.

*S. Utsunomiya*, 75 Haw. at 507–08, 866 P.2d at 965 (citations and brackets omitted). It observed that subsequent lis pendens statutes were intended "to ameliorate the harsh effect of the common law rule on third parties, [by] limit[ing] the legal fiction of 'constructive knowledge' of pending claims to those instances where a notice of lis pendens was recorded." *Id.* at 508–09, 866 P.2d at 965 (citations omitted). In a similar vein, the supreme court reasoned that "a narrow construction of Hawai'i's lis pendens statute" was warranted "due to the real potential for abuse of [a] lis pendens":

[T]he practical effect of a recorded lis pendens is to render a defendant's property unmarketable and unsuitable as security for a loan. The financial pressure exerted on the property owner may be considerable, forcing him [or her] to settle not due to the merits of the suit but to rid himself [or herself] of the cloud upon his [or her] title. The potential for abuse is obvious.

*Id.* (quoting *La Paglia v. Superior Court*, 215 Cal.App.3d 1322, 264 Cal.Rptr. 63, 64 (1989) (citations omitted)). Accordingly, the supreme court found persuasive authority holding that "the lis pendens statute must be strictly construed" and in applying the express provisions in HRS § 634–51, concluded that "the application of lis pendens should be limited to actions *directly* seeking to obtain title to or possession of real property."[20] *Id.* (emphasis in original).

---

19. Tachibana concedes in his answering brief that despite dealing with unregistered land, *S. Utsunomiya* is applicable to the instant case.

20. HRS § 634–51 (1993) states, in relevant part:

In any action concerning real property or affecting the title or the right of possession of real property, the plaintiff, at the time of filing

the complaint, and any other party at the time of filing a pleading in which affirmative relief is claimed, or at any time afterwards, may record in the bureau of conveyances a notice of pendency of action.... From and after the time of recording the notice, a person who becomes a purchaser or incumbrancer of the property affected shall be deemed to have constructive

HRS § 501–151 is similar to HRS § 634–51 in limiting the filing of lis pendens to "any action affecting the title to real property or the use and occupation thereof or the buildings thereon" but broader in authorizing the filing of a lis pendens in actions for writs of entry and actions for partition. Aside from the inclusion of these latter types of actions, we discern no material difference between the statutory language of HRS § 501–151 and HRS § 634–51 and no policy reasons which would justify a broad, rather than a strict application, of the lis pendens provisions in HRS § 501–151. As a result, we hold that the land court lis pendens statute, HRS § 501–151, like HRS § 634–51, the unregistered land lis pendens statute, must be strictly construed.

2.

In *S. Utsunomiya*, the supreme court indicated that in determining whether a lis pendens was appropriately filed, courts should restrict their review to the "face of the complaint." *Id.* Applying that test, the supreme court found that, "[a] fair reading of Utsunomiya's amended complaint reveals that it is predominantly a fraud and breach of contract complaint (obviously amended to allege an equitable lien) seeking damages." The supreme court then concluded that because Utsunomiya had not claimed title to or right of possession to the property, HRS § 634–51 was not implicated, and therefore, the amended lis pendens should be expunged. *Id.* at 513, 866 P.2d at 967.

■■■ Having adopted a strict construction of HRS § 501–151, we apply the same standard set forth in *S. Utsunomiya* and hold that whether a lis pendens is valid under HRS § 501–151 is determined by the nature of the relief sought in the recording parties' pleading. *Id.* at 505, 866 P.2d at 964.

■■■ NY Diamond and Masuda's underlying complaint sought the following:

[D]eclaratory judgment that from the sale of the Ala Wai King, Masuda and/or N.Y. Diamond are entitled to *reimburse-*

ment *from [Japan ECO and ECO Hawaii] for all expenses and costs incurred in the renovation and operation of the Ala Wai King.*

[D]eclaratory judgment that N.Y. Diamond is entitled to *half [sic] of the profit from the sale of the Ala Wai King after reimbursement* to Masuda and/or N.Y. Diamond for all expenses and costs incurred in the renovation and operation for the Ala Wai King and reimbursement to [Japan ECO and Hawaii ECO] for the purchase of the Ala Wai King and any interest payments made on any loans for the purchase of the Ala Wai King.

[G]eneral and special damages.

[I]nterest.

[R]easonable attorney's fees and costs.

[S]uch other and further relief as this Court deems just and proper.

(Emphases added.)

As indicated, N.Y. Diamond and Masuda essentially prayed for declaratory relief and damages. The declaratory relief related to distribution of the sale proceeds from the property rather than to a "writ of entry, [an] action for partition, or any action affecting the title to real property or the use and occupation thereof or the building thereon." HRS § 501–151. The underlying action, as a result, did not fall within any of the HRS § 501–151 authorized categories. Accordingly, neither the lis pendens nor the supplemental lis pendens were properly filed under HRS § 501–151. *Cf. Kaapu v. Aloha Tower Dev. Corp.*, 72 Haw. 267, 270, 814 P.2d 396, 398 (1991) (holding that where plaintiff's only claim of interest in the property was as to a percentage of the income derived from the property, but not to title or control of property, plaintiff was not entitled to cloud title by filing a lis pendens under HRS § 634–51); *see also* 14 Richard. R. Powell and Patrick J. Rohan, *Powell on Real Property* ¶ 907.2[3][a] at 82A–19 (1997) ("Actions to recover a debt, . . . and other forms of litigation merely seeking a recovery of money damages do not give rise to lis pendens because no specific property is designated for

notice of the pendency of the action and be bound by any judgment entered therein if the person claims through a party to the action;

provided that in the case of registered land, *[HRS § ] 501–151 shall govern.*
(Emphases added.)

relief in the judgment or decree. No lis pendens is involved merely because a money judgment gives the prevailing party a judgment lien in real property owned by the defeated party.") (footnotes omitted).

Because none of N.Y. Diamond and Masuda's claims supported the filing of a HRS § 501–151 lis pendens, we hold that the lis pendens and supplemental lis pendens were invalid.

### III.

### A.

We conclude, further, that the circuit court erred with regard to the following "findings" [21]:

6. The [s]tipulated [j]udgment and [o]rder is a valid lien on the [Ala Wai King].

7. [GGS] acquired title to the [Ala Wai King] subject to the [s]tipulated [j]udgment and [o]rder.

 Before the circuit court, N.Y. Diamond and Masuda contended that the stipulated judgment was a valid judgment lien against the Ala Wai King, the priority of which related back to the lis pendens recorded on September 15, 1993. A lis pendens gives constructive notice to any prospective purchaser of property that the property is the subject of ongoing litigation and that the purchaser will be bound by the outcome of the litigation. As we have noted, however, the lis pendens and supplemental lis pendens recorded by N.Y. Diamond and Masuda were invalid.

NY Diamond and Masuda had argued in the circuit court that because GGS executed the general warranty deed after the lis pendens was recorded, GGS acquired the Ala Wai King subject to the stipulated judgment. Because the stipulated judgment had not been satisfied, N.Y. Diamond and Masuda contended that the stipulated judgment "continues as a valid judgment lien on the Ala Wai King, superior and prior to the interests of GGS."

Anticipating this same argument on appeal, GGS argued in its opening brief that the "stipulated judgment and order" was a non-final damage determination which did not constitute a judgment lien upon real property.

### 1.

 A judgment lien is "[a] lien binding the real estate of a judgment debtor, in favor of the holder of the judgment, and giving the latter a right to levy on the property for the satisfaction of his judgment to the exclusion of other adverse interests subsequent to the judgment." *Black's Law Dictionary* at 845 (6th ed. 1990). Thus,

[t]he purpose of a statute creating a judgment lien is to preserve to the judgment creditor the status existing at the time of the creation of the lien to the exclusion of adverse interests subsequent to the establishment of the lien and prior to the issuance of execution.

*Nichols v. Wah Chong Sun,* 28 Haw. 395, 398 (1925). Consequently, a statute granting a general lien by judgment on land "confers a right to levy on the same ... and when the levy is actually made on the same the title of the creditor, for this purpose relates back to the time of his judgment so as to cut out intermediate incumbrances [sic]." *Id.* (citations and internal quotation marks omitted).

 The stipulated judgment and order here was for a certain sum of money. In determining when a "money judgment" constitutes a lien on registered property, we must first refer to HRS § 636–3 (1993) which relates to the recordation of a money judgment on unregistered land. HRS 636–3 states:

**Judgment, lien when.** *Any money judgment or decree* of a state court or the United States District Court for the District of Hawaii [Hawai'i] *shall be a lien upon real property when a copy thereof,* certified as correct by a clerk of the court where it is entered, *is recorded in the bureau of conveyance.* No such lien shall

---

21. These propositions are actually conclusions of law. The standard of review applicable to the circuit court's conclusions of law is the right/ wrong standard. *Nelson v. Boone,* 78 Hawai'i 76, 80, 890 P.2d 313, 317 (1995).

continue beyond ten years after the date of the judgment. . . .

*In the case of registered land, section 501–102 shall govern.*

(Emphases added.)

Correspondingly, HRS § 501–102 (1993) states, in pertinent part:

**Filing liens, etc., notice.** *Every* convey-ance, lien, attachment, *order, decree,* in-strument, or entry *affecting registered land, which would under existing laws, if recorded, filed, or entered in the bureau of conveyances, affect the real estate to which it relates, shall, if registered,* filed or re-corded, or entered in the office of the assistant registrar in the bureau of convey-ances, *be notice to all persons* from the time of such registering, filing, recording, or entering.

(Emphases added.)

While not clearly worded, HRS § 501–102 assumes that every "lien . . . order, [or] de-cree" filed with the assistant registrar of the land court would "affect the real estate to which it relates" in the same manner as a "lien . . . order [or] decree" filed in the bu-reau of conveyances would affect unregis-tered property "under existing laws." Thus, HRS § 501–102 would import lien status on a "money judgment or decree" filed in the office of the assistant registrar. *See also* HRS § 501–81 ("Registered land, and owner-ship therein, shall in all respects be subject to the same burdens and incidents which attach by law to unregistered land. Nothing in this chapter shall in any way be construed to relieve registered land or the owners thereof . . . from liability to attachment or . . . or levy on execution; or from liability to any lien of any description established by law. . . .")

Reflecting this intent, Rules of the Land Court Rule 62(e) employs the language of HRS § 636–3 and states, in relevant part:

Judgment lien. *Any money judgment or decree of a state court* or the United States District Court for the District of Hawaiʻi, if certified as correct by a clerk of the court where it is entered, *may be recorded with the assistant registrar. The effect of such recordation and the duration of any lien created thereby shall be as provided by law (see HRS § 636–3).* A satisfaction of judg-ment or a copy thereof, certified as correct by a clerk of the court where it is entered, may be recorded with the assistant regis-trar. Every judgment, assignment of judgment or satisfaction of judgment shall contain a reference to the proper number of the certificate affected.

(Emphases added.)

2.

We believe that the recorded "stipu-lated judgment and order" in the instant case did not constitute a judgment lien on GGS's property because it was not final. Unlike a lis pendens, "a judgment lien arises only after a judgment has become final." 12 David A. Thomas, *Thompson on Real Prop-erty* § 101.08(e) at 524 (ed. 1997).[22] "Gener-ally, to have the effect of creating a lien, a judgment must be final, and be for a sum certain or payable in installments." *Id.; see also Schuling v. Tilley,* 454 N.W.2d 899, 900–01 (Iowa App.1990) (citation omitted) ("To create a judgment lien there must be a final valid and subsisting judgment, rendered by a duly authorized court, for payment of a de-fined and certain amount."); *Bryan v. Nel-son,* 180 Ariz. 366, 884 P.2d 252 (App.1994) (stating judgment creates a lien when it is final, valid, definite and collectible by execu-tion against debtor's property); *City of Sali-na v. Star B, Inc.,* 241 Kan. 692, 739 P.2d 933

---

**22.** A judgment lien is distinguishable from a lis pendens.

While a judgment lien arises only after a judg-ment has become final, litigants can sometimes acquire interests in an adversary's lands as of the date of the commencement of suit, by re-cording in the land records a lis pendens. . . . The purpose of the lis pendens is to put subse-quent purchasers and encumbrancers on no-tice of the pending litigation, and to subject them to the outcome of the suit. *Unlike the judgment lien, the lis pendens is not itself a lien but merely a device to subordinate subsequent takers to the results of the suit. Not all claims in litigation can be protected by a lis pendens, for the statues usually permit the recordation of a lis pendens only in connection with claims to an interest in the property.*

12 David A. Thomas, *Thompson on Real Proper-ty* § 101.08(e) at 524 (ed. 1997).

(1987) (holding uncertified non-final damage determination was insufficient to create an automatic lien which arises upon the entry of a "judgment" under Kansas law); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2661, at 128–29 (2d ed. 1983) ("Other matters that should be noted in relation to the entry of a judgment under [Federal Rules of Civil Procedure] Rule 54(b) are that it enables a lien to be imposed on the judgment debtor's property and a writ of execution to be issued to begin the process of collecting any damage award. [28 U.S.C. § 1962] provides that every district court judgment shall be a lien on the property in the state in which the court is sitting, in accordance with the law of that state; state law commonly requires a judgment to be final in order to create a lien.").

The stipulated judgment and order was not a final judgment because it neither disposed of all the claims in the lawsuit nor was certified as final pursuant to HRCP Rule 54(b).[23] Thus, we conclude that a non-final damage determination cannot constitute a judgment lien upon real property.

On appeal, Tachibana states in his answering brief that the "[s]tipulated [j]udgment was not an encumbrance when it was filed with the [a]ssistant [r]egistrar [of the land court on] December [24], 1992." In effect, this statement reflects a concession that the "stipulated judgment and order" was a non-final damage determination which could not constitute a judgment lien on GGS's registered property.

### B.

Instead, Tachibana maintains that the stipulated judgment represented an equitable lien on the Ala Wai King[24] and was permissibly recorded pursuant to HRS § 501–102.

■ An equitable lien is a claim for payment secured by real property not as a result of any agreement between the parties but because of the application of principles of equity and fairness. *See Small v. Badenhop*, 67 Haw. 626, 639, 701 P.2d 647, 656 (1985). Upon entry of a judgment, the claim for payment relates back to the date of the parties' conduct that gave rise to the lien. *Holder v. Williams*, 167 Cal.App.2d 313, 334 P.2d 291, 293 (1959) (stating the rule that " '[a]lthough an equitable lien is not judicially recognized until a judgment is rendered declaring its existence, the lien relates to the time it was created by the conduct of the parties.' " (quoting *Hise v. Superior Court*, 21 Cal.2d 614, 134 P.2d 748, 755 (1943))). In this regard, Tachibana urges that the stipulated dismissal filed November 18, 1993 was the equivalent of a final judgment and relates back to the recording of the stipulated judgment on December 23, 1992. Hence, Tachibana argues that because GGS recorded its deed on March 12, 1993, GGS took the property subject to the stipulated judgment.

■ "However, an equitable lien is not judicially recognized until a judgment is rendered *declaring its existence.*" *S. Utsunomiya*, 75 Haw. at 500, 866 P.2d at 962 (citations omitted) (emphasis added). As a result, "until such [a] time, a claimed equitable lien is 'a mere floating equity' that is unenforceable and does not encumber property." *Id.* at 500, 866 P.2d at 962 (citations omitted).

■ Here, N.Y. Diamond and Masuda's complaint in the underlying damage action did not request that an equitable lien be recognized or declared. Furthermore, nei-

**23.** The stipulated judgment states, in pertinent part:

> NOW, THEREFORE, the parties agree that judgment shall be entered in favor of Plaintiffs NEW YORK DIAMOND, INC. and TOSHIO MASUDA and against Defendants JAPAN E.C.O. CO., LTD., E.C.O. HAWAII, INC., fka JAPAN E.C.O. HAWAII, INC., and YASUSHI ARAI, jointly and severally, for reimbursement of all expenses and costs incurred in the renovation and operation of the Ala Wai King in the amount of $953,460.52, together with in-

> terest at the legal rate pursuant to Section 478–3 of the [Hawai'i] Revised Statutes, as said statute may be amended from time to time.

**24.** GGS argued on appeal that the stipulated judgment was not an equitable lien, a mortgage, or a writ of attachment. While we doubt that the stipulated judgment constitutes a mortgage or a writ of attachment, we do not decide such claims because Tachibana does not argue on appeal that it was either of these instruments.

ther the December 23, 1992 stipulated judgment and order nor the November 18, 1993 stipulated dismissal purported to declare the existence of an equitable lien on GGS's property. Hence, the stipulated judgment and order did not constitute an equitable lien on the property and it follows that GGS did not acquire title subject to the stipulated judgment and order.

## IV.

In conclusion, we hold that the lis pendens and supplemental lis pendens were invalid and the stipulated judgment and order did not constitute an equitable lien upon GGS's title to the Ala Wai King. Therefore, we vacate the circuit court's (1) February 3, 1995 order denying GGS's motion for expungement; (2) April 10, 1995 final judgment; and (3) April 25, 1995 order denying GGS's motion to alter or amend the order denying GGS's motion to expunge. We remand the case to the circuit court with instructions to enter an order concluding that the lis pendens and supplemental lis pendens were invalid, the stipulated judgment and order did not constitute an equitable lien on the Ala

Wai King, and GGS did not acquire the Ala Wai King subject to the stipulated judgment and order.

The Hawai'i Supreme Court has held that on an appeal from a land court decision, an appellate court may determine the propriety of a notation on a certificate of title and upon a determination that a notation is improper, order the land court to expunge it. *Matson Nav. Co. v. F.D.I.C.*, 81 Hawai'i 270, 279, 916 P.2d 680, 689 (1996).

The appeal here is from the circuit court. Therefore, we do not issue an order of expungement as was done in *Matson.* As we indicated previously, the lis pendens, supplemental lis pendens, and stipulated judgment and order on GGS's certificate of title may be expunged upon a proper petition to the land court.[25]

---

**25.** While a release of the lis pendens and supplemental lis pendens was recorded on GGS's certificate of title, the lis pendens and supplemental lis pendens apparently were not expunged and still appear as notations upon GGS's certificate of title.