63 P.3d 389

Steven Alan KNAUER as Trustee of and on behalf of the Betty Rogers Unrecorded Revocable Trust dated November 1, 1999, for the Trust individually and as an apartment owner and member of the Association of Apartment Owners of Castle Surf Apartments, a condominium, and derivatively on behalf of all apartment owners of the Castle Surf Apartments, and on behalf of himself as a director of the Association of Apartment Owners of Castle Surf Apartments, Plaintiff–Appellant,

v.

Robert W. FOOTE, Helen Sheehan, Joseph L. Beaver, and Floye Adams, individually and as members and officers and directors and as controlling the Board of Directors of the Association of Apartment Owners of Castle Surf Apartments; and William Foote, Defendants–Appellees.

and

John Does 1–20; Jane Does 1–20; Doe Partnerships 1–20; Doe Corporations 1–20; and Doe Entities 1–20, Defendants,

and

The Association of Apartment Owners of Castle Surf Apartments, a Hawaii non-profit Corporation, Nominal Defendant–Appellee,

The Association of Apartment Owners of Castle Surf Apartments, Specially–Appearing Defendant–Appellee.

No. 22916.

Supreme Court of Hawai'i.

Feb. 21, 2003.

Gary Victor Dubin, Honolulu, On the briefs, for plaintiff-appellant.

Douglas H. Knowlton, On the briefs, for defendants-appellees.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ., Circuit Judge MARKS, Assigned by Reason of Vacancy, and ACOBA, J., Dissenting.

Opinion of the Court by NAKAYAMA, J.

Plaintiff-appellant Steven Knauer appeals from the judgment of the first circuit court, the Honorable Kevin S.C. Chang presiding, granting the specially-appearing defendant-appellee Association of Apartment Owners of Castle Surf Apartment's (the Association's) motion to expunge notice of pendency of action.[1] On appeal, Knauer raises two points of error: (1) that he had standing to record a *lis pendens*;[2] and (2) that the circuit court

---

1. In Hawai'i, the doctrine of *lis pendens* is codified in HRS § 501–151, which provides for the recording of a notice of pending action, and HRS § 634–51, which provides for the recording of a notice of pendency of action. In this opinion, we employ the term *lis pendens* as the equivalent of both notice of pending action and notice of pendency of action. *See S. Utsunomiya Enters. v. Moonuku Country Club*, 75 Haw. 480, 487 n. 4, 866 P.2d 951, 957 n. 4 (1994); *GGS (HI), Inc. v. New York Diamond (In re 2003 Ala Wai Blvd.)*, 85 Hawai'i 398, 406, 944 P.2d 1341, 1349 (App. 1997).

2. Knauer's first point of error asserts that he has standing to record a *lis pendens*. However, this point of error is irrelevant to the circuit court's order because Knauer's standing was not challenged. The circuit court found that Knauer's complaint "d[id] not constitute an action which warrants the filing and recording of a Lis Pendens against the subject property." The circuit court's order cited HRS § 501–151, *Kaapu v. Aloha Tower Development*, 72 Haw. 267, 814 P.2d 396 (1991), and *GGS (HI), Inc. v. New York Diamond (In re 2003 Ala Wai Blvd.)*, 85 Hawai'i 398, 406, 944 P.2d 1341, 1349 (App.1997). In

lacked jurisdiction to expunge the *lis pendens*.

In response, the defendants-appellees Robert Foote, Helen Sheehan, Joseph Beaver, Floye Adams, William Foote, and the Association[3] contend that (1) this court lacks jurisdiction over this appeal, (2) Knauer's claims do not affect the title to real property or the use and occupation of real property, (3) case law supports restricting the utilization of *lis pendens* and does not support Knauer's arguments, and (4) the circuit court has authority to expunge a *lis pendens* pursuant to Hawai'i Revised Statutes (HRS) chapter 507D (1998).

We hold that (1) this court has appellate jurisdiction over an appeal from a circuit court order expunging a *lis pendens* because such an order is a collateral order, (2) the circuit court has jurisdiction to expunge a *lis pendens* pursuant to HRS § 501–151 (1993), HRS § 501–152 (1993), and *TSA International Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 990 P.2d 713 (1999), and (3) the circuit court properly expunged the *lis pendens* because none of Knauer's claims attempted to obtain title to or possession of the real property at issue. Therefore, we affirm the circuit court's order granting the specially-appearing defendant-appellee Association's motion to expunge notice of pendency of action because Knauer's application for *lis pendens* did not seek to obtain title to or possession of real property and thus was not valid.

## I. BACKGROUND

On April 21, 1999, Knauer filed a complaint in the first circuit court asserting that he was an apartment owner and a member of the board of directors of the Association, a condominium. In these capacities and, derivatively, on behalf of all apartment owners at Castle Surf Apartments, Knauer alleged that the Association and various other defendants, including Robert Foote, who was a member of the board of directors, negotiated with the leasehold owner and the Association to acquire a condominium for a fee less than the Association's true (and original) purchase price. Knauer's prayer for relief involved either equitable relief, in the form of an injunction, or money damages.[4] On April 21, 1999, Knauer also filed a notice of pendency of action (*lis pendens*) in the first circuit court.

On May 24, 1999, the Association filed a motion to expunge the *lis pendens*. The Association argued that this court has consistently held that the *lis pendens* statute should be strictly construed and that a *lis pendens* should be expunged absent a claim of title or a right of possession of the realty involved. On September 7, 1999, the circuit court granted the Association's motion and ordered the *lis pendens* expunged. Knauer timely appealed.

## II. STANDARD OF REVIEW

### A. *Lis Pendens*

"Whether a *lis pendens* should be expunged is a question to be resolved in the exercise of the trial court's discretion; accordingly, the trial court's decision is reviewed for an abuse of that discretion." *S. Utsunomiya v. Moomuku Country Club*, 75 Haw. 480, 504, 866 P.2d 951, 964 (1994) (citations omitted). "In determining the validity of a *lis pendens*, courts have generally restricted their review to the face of the complaint." *Id.* at 505, 866 P.2d at 964 (citations omitted).

### B. Statutory Interpretation

"The interpretation of a statute is a question of law that is reviewed de novo." *State v. Mara*, 98 Hawai'i 1, 10, 41 P.3d 157, 166 (2002) (citations omitted).

*Kaapu* and *GGS*, none of the filed claims supported the filing of a *lis pendens*. Similarly, none of Knauer's claims supports the filing of a *lis pendens*. Thus, because standing was not challenged, it will not be addressed further.

3. The defendants will be collectively referenced as "the Association."

4. Count One—Injunctive Relief Against All Defendants; Count Two—Breach of Fiduciary Duty Against All Directors; Count Three—Negligent and Reckless Management Against All Directors; Count Four—Fraud and Deceit Against All Defendants; Count Five—Punitive Damages Against All Defendants; Count Six—HRS § 514A–94(b) Award Against All defendants; Count Seven—Appointment of a Receiver for the Association.

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*State v. Sullivan,* 97 Hawai'i 259, 262, 36 P.3d 803, 806 (2001) (citations· and internal quotations omitted).

## III. DISCUSSION

· We will first address the Association's argument that this court lacks jurisdiction over this appeal because without jurisdiction this court has no authority to address Knauer's points of error. We hold that this court has jurisdiction over collateral orders such as the circuit court's order expunging the *lis pendens.* We also hold that the circuit court has jurisdiction to expunge a *lis pendens* pursuant to HRS § 501–151 (1993), HRS § 501–152 (1993), and *TSA International Ltd. v. Shimizu Corp.,* 92 Hawai'i 243, 990 P.2d 713 (1999). Finally, we hold that the circuit court properly expunged the *lis pendens* because none of Knauer's claims attempted to obtain title to or possession of the real property at issue. Therefore, we affirm the circuit court's order granting the Association's motion to expunge the notice of pendency of action.

**A. This court has appellate jurisdiction over an appeal from a circuit court order expunging a *lis pendens* because such an order is a collateral order.**

The Association argues that this court lacks jurisdiction over the appeal *sub judice* because (1) the order was interlocutory and was not certified,[5] (2) the order was not collateral, and (3) the doctrine of *Forgay v. Conrad,* 47 U.S.(6 How.) 201, 12 L.Ed. 404 (1848)[6] is inapplicable. Knauer asserts that this court has jurisdiction pursuant to the collateral order doctrine as set forth in *International Savings and Loan Association v. Woods,* 69 Haw. 11, 15, 731 P.2d 151, 154 (1987), and the irreparable injury doctrine as adopted by *Penn,* 2 Haw.App. at 274, 630 P.2d at 649 (quoting *Forgay,* 47 U.S. (6 How) at 206). Because an order granting a motion to expunge a *lis pendens* is a collateral order and Knauer timely appealed, this court has appellate jurisdiction.

"This court has long held that jurisdiction is the base requirement for any court resolving a dispute because without jurisdiction, the court ·has no authority to consider the case." *TSA International Ltd. v. Shimizu Corp.,* 92 Hawai'i at 265, 990 P.2d at 737 (internal quotation marks and citations omitted). In civil cases, this court's appellate jurisdiction arises from a circuit court's final judgment or order pursuant to HRS § 641–1(a) (1993),[7] from a circuit court's interlocu-

5. A *lis pendens,* contrary to the Association's assertion, is not an interlocutory order. An interlocutory order is one made between the commencement and the end of a suit "that does not fully decide one or more claims or the rights and liabilities of one or more parties[.]" *TBS Pac., Inc. v. Tamura,* 5 Haw.App. 222, 230, 686 P.2d 37, 44 (1984); *see also Dole v. Gear,* 14 Haw. 554, 565 (1903). The order granting the Association's motion to expunge the *lis pendens* fully determined Knauer's right to record the *lis pendens.* See *infra* at 6–9 for a discussion regarding the elements of a collateral order in which it is explained that a *lis pendens* fully decides one issue.

6. The ICA, in *Penn v. Transportation Lease Hawaii, Ltd.,* 2 Haw.App. 272, 274, 630 P.2d 646, 649 (1981), relied on *Forgay v. Conrad* for the proposition that it had jurisdiction to review the appellant's appeal, despite the fact that the ap-

peal was not interlocutory and the circuit court had not certified the appeal, because the appellant would suffer irreparable injury if he had to wait for a final outcome of the litigation. Knauer does not claim that he would experience irreparable harm. The *Forgay* doctrine is, therefore, irrelevant to this appeal and will not be discussed further.

7. HRS § 641–1(a) provides:

Appeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts and the land court, to the supreme court or to the intermediate appellate court, except as otherwise provided by law and subject to the authority of the intermediate appellate court to certify reassignment of a matter directly to the supreme court and subject to the authority of the supreme court to reassign a matter to itself from the intermediate appellate court.

tory order pursuant to HRS § 641–1(b) (1993),[8] or from a collateral order.

Judgments, orders, or decrees need not be final judgments to be appealable, if they are collateral orders "affecting rights which are independent of, and separable from, the rights asserted in the main action." *Chuck v. St. Paul Fire & Marine Ins. Co.*, 61 Haw. 552, 555, 606 P.2d 1320, 1323 (1980) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). The collateral order doctrine is narrowly construed; thus, to fall within its confines an order "must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Siangco v. Kasadate*, 77 Hawai'i 157, 161, 883 P.2d 78, 82 (1994) (alteration in original) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351, [ ] (1978) (footnote omitted)); *see also Association of Owners v. Swinerton & Walberg Co.*, 68 Haw. 98, 105, 705 P.2d 28, 34 (1985); *MDG Supply, Inc. v. Diversified Invs., Inc.*, 51 Haw. 480, 481–82, 463 P.2d 530, 532 (1969).

An order expunging a *lis pendens* meets the three criteria. The order conclusively resolves whether the *lis pendens* should or should not be cancelled because nothing further in the suit can affect the validity of the notice. The order cancelling the *lis pendens* does not address the merits of the underlying claim. And if the movant had to wait until final judgment on the underlying claim, the realty could be sold before the issue was resolved, thereby rendering the order unreviewable. *See Scroggins v. Edmondson*, 250

Ga. 430, 297 S.E.2d 469, 472 (1982); *Keith v. Bratton*, 738 F.2d 314, 316 (8th Cir.1984); *Chrysler Corp. v. Fedders*, 670 F.2d 1316, 1318 n. 2 (3d Cir.1982); *Suess v. Stapp*, 407 F.2d 662, 663 (7th Cir.1969).

In the instant case, the September 7, 1999 order expunging the *lis pendens* conclusively determined whether Knauer's action was one in which a *lis pendens* could or could not be filed. The issue of the *lis pendens* was completely separate from Knauer's underlying action in which he sought equitable relief and damages. Once the real property in the underlying action was sold, review of Knauer's *lis pendens* would serve no purpose. We hold that an order expunging a *lis pendens* is a collateral order, and thus this court has jurisdiction over this appeal.

**B. The circuit court has jurisdiction to expunge a *lis pendens*.**

Knauer argues that the circuit court lacked jurisdiction to expunge the *lis pendens* filed against land court property. Knauer relies on an Intermediate Court of Appeals' (ICA's) holding that the "circuit court did not have jurisdiction to order that the lis pendens, supplemental lis pendens, or stipulated judgment and order be expunged." *GGS (HI), Inc. v. New York Diamond (In re 2003 Ala Wai Blvd.)*, 85 Hawai'i 398, 406, 944 P.2d 1341, 1349 (App.1997). We overrule the ICA's holding in *GGS* that only the land court can expunge a *lis pendens*, and thus Knauer's reliance on *GGS* is unavailing. Conversely, the Association argues that the circuit court had jurisdiction to expunge the *lis pendens* pursuant to HRS §§ 507D–2 (2001) [9] and 507D–7 (2001) [10]. The Associa-

---

**8.** HRS § 641–1(b) provides:

Upon application made within the time provided by the rules of court, an appeal in a civil matter may be allowed by a circuit court in its discretion from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it. The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court.

**9.** HRS § 507D–2 addresses the definitions related to nonconsensual common law liens and provides in relevant part:

"Lien" means a recorded instrument that creates an encumbrance on or affects title or ownership of property.

"Lien claimant" means the person who executes or records or causes or materially assists in causing the lien to be prepared, executed, or recorded.

"Nonconsensual common law lien" means a lien that:

(1) Is not provided for by a specific statute;

(2) Does not depend upon, require by its terms, or call for the consent of the owner of the property affected for its existence; and

(3) Is not a court-imposed equitable or constructive lien.

**10.** HRS § 507D–7(a) provides in relevant part:

If the circuit court finds the purported lien invalid, it shall order the registrar to expunge

tion wrongly applies HRS chapter 507D in the instant case.

First, in *GGS*, New York Diamond had filed a breach of contract lawsuit against GGS's predecessor in interest, ECU Hawaii, prior to GGS filing its motion to expunge the *lis pendens*. *GGS*, 85 Hawai'i at 401, 944 P.2d at 1344. New York Diamond recorded a *lis pendens* after serving ECU Hawaii with its complaint. *Id.* On November 18, 1993, New York Diamond and ECU Hawaii filed a stipulation which dismissed all the claims. GGS then filed motions in the breach of contract action to vacate the *lis pendens*. On September 7, 1999, the circuit court granted the motion to expunge the *lis pendens*, stating that New York Diamond's complaint did "not constitute an action which warrants the filing and recording of a Lis Pendens." It is unclear what specific issues were appealed, but the ICA addressed whether a circuit court had jurisdiction to (1) hear the merits of a motion to expunge a *lis pendens* that was recorded in the land court, (2) order a *lis pendens* expunged, and (3) determine whether the *lis pendens* was valid. *Id.* at 403, 944 P.2d at 1346.

The ICA held that, while the circuit court had jurisdiction to hear the merits of the motion to expunge and even determine whether the *lis pendens* was valid, it did not have the jurisdiction to order the *lis pendens* expunged. *Id.* at 401, 944 P.2d at 1344. The ICA came to this conclusion after comparing recordation in the land court registration system with recordation in the bureau of conveyances. The ICA reasoned that, because a certificate of title issued by the land

court was "conclusive and unimpeachable with regard to all matters contained therein," only the land court could amend the certificate of title. *Id.* at 405, 944 P.2d at 1348. As support for this conclusion, the ICA cited *Iaea v. Iaea*, 59 Haw. 648, 586 P.2d 1015 (1978) [11] and HRS § 501–196 (1993).[12] Additionally, the ICA stated that case law and statutes dictated the conclusion that, although the circuit court had jurisdiction to hear the merits of the case and determine the validity of the claims, it did not have jurisdiction to actually order the registrar to expunge the *lis pendens*.

*Iaea* stands for the narrow proposition that the circuit court had jurisdiction to hear the subject matter of the dispute, *i.e.*, the validity of a signature on a deed, but that it did not have the jurisdiction to order the land court to expunge the deed upon a finding that the signature was forged. *Iaea*, 59 Haw. at 649–50, 586 P.2d at 1016. *Iaea* does not stand for the proposition that the circuit court lacks jurisdiction to expunge a *lis pendens* that acts as a burden on title as opposed to an alteration of or amendment to title. This is demonstrated by this court's statement in *S. Utsunomiya* that "a *lis pendens* does not prevent title from passing to the grantee, but operates to cause the grantee to take the property subject to any judgment rendered in the action supporting the *lis pendens*." *S. Utsunomiya*, 75 Haw. at 502, 866 P.2d at 963. A *lis pendens* cannot alter or amend a certificate of title because a certificate of title would not be transferable

---

the instrument purporting to create it, and order the lien claimant to pay actual damages, costs of suit, and reasonable attorneys' fees. This order shall be presented to the registrar for recordation and shall have the effect of voiding the lien from its inception. . . .

11. The *Iaea* court held that "[t]he circuit court had jurisdiction over the subject matter, despite the fact that [the suit] concerned registered land." *Iaea*, 59 Haw. at 651, 586 P.2d at 1017. However, that part of the judgment ordering the registrar to expunge deeds and certificates of title issued by the land court was unenforceable. *Id.* at 651, 586 P.2d at 1017.

12. HRS § 501–196 provides in relevant part:
No erasure, alteration, or amendment shall be made upon the registration book after the entry of a certificate of title or of a memorandum thereon, and the approval of the same by the registrar or an assistant registrar except by order of the court recorded with the assistant registrar, provided that the registrar or assistant registrar may correct any clerical error made by personnel of the registrar's or assistant registrar's office.
The "court" referred to in this section is the land court. HRS § 501–1 (1993) provides that, "where the context requires a different construction, the word 'court' ... means the land court[.]"

unless properly amended pursuant to HRS § 501–196.

HRS § 501–196 is found under the heading "amendment and alteration of certificate of title." This section expressly details the actions necessary to erase, alter, or amend the registration book after a certificate of title has been entered. Examples provided within the text of HRS § 501–196 include registered interests that have ceased, new interests that have arisen, errors, marriage, divorce, and dissolution of a corporation. HRS § 501–196. A registered owner or person in interest may petition the land court for the erasure, alteration, or amendment of the certificate of title, the purpose of which would be to have the court order the entry of a new certificate. A *lis pendens* does not effect any erasure, alteration, or amendment to the certificate of title. The sole function of the *lis pendens* is to "notify prospective purchasers and encumbrancers that any interest acquired by them in property in litigation is subject to decision of court[.]" *Black's Law Dictionary* 643 (6th ed.1990); *see also S. Utsunomiya*, 75 Haw. at 511–12, 866 P.2d at 966–67; *Harada*, 4 Haw.App. at 443, 667 P.2d at 838. Thus, in *GGS*, the ICA erred when it relied on HRS § 501–196 to support its holding, which we now overrule, that only the land court can expunge a *lis pendens* asserted against land court-registered real property.[13]

It is also worth noting that the ICA's opinion in *GGS* is perplexing because, while the ICA opines that it is permissible for the circuit court to hear the merits of the motion to expunge a *lis pendens* and to decide its validity, the ICA also declares that the circuit court is without authority to effectuate its decision. Based on the ICA's analysis, a litigant could have its motion to expunge heard by the circuit court and even have the *lis pendens* declared invalid, but would then be required to go to the land court for a hearing on whether the *lis pendens* should be expunged. This is neither an effective use of judicial resources nor a meaningful way in which to divide the power of the land and circuit courts. *See Dorrance v. Lee*, 90 Hawai'i 143, 147, 976 P.2d 904, 908 (1999), for the proposition that, "with the increase of civil litigation, escalating costs to the parties, and the strain on already scarce judicial resources, there is a dire need for prompt, equitable, and cost-efficient resolution of civil disputes before trial." *Id.* at 147, 976 P.2d at 908 (quoting *Richardson v. Sport Shinko*, 76 Hawai'i 494, 510, 880 P.2d 169, 185 (1994)).

■ Second, the Association argues that the circuit court has jurisdiction to expunge a *lis pendens* pursuant to HRS §§ 507D–2 and 507D–7. However, HRS chapter 507D is inapposite to the instant case. HRS chapter 507D is titled "Nonconsensual Common Law Liens." A nonconsensual common law lien is defined in the statute as one that "[i]s not provided for by a specific statute." HRS § 507D–2. The statute further states that "[n]othing in this chapter is intended to affect ... [a]ny lien provided for by statute...." HRS § 507D–3.

In the present case, Knauer filed the *lis pendens* pursuant to HRS §§ 501–151 and 634–51 (1993). HRS § 501–151 authorizes the filing or recording of a *lis pendens* against registered land for actions "affecting the title to real property or the use and occupation thereof or the buildings thereon." HRS § 501–151.[14] *See GGS*, 85 Hawai'i at 400, 944 P.2d at 1343. Similarly, HRS § 634–51[15] authorizes the recording of a *lis*

---

13. To the extent that the issue presented is not an amendment or alteration to a certificate of title, no analysis regarding the continued validity of *Iaea* is provided.

14. HRS § 501–151 provides in relevant part:

No writ of entry, action for partition, or any action affecting the title to real property or the use and occupation thereof or the buildings thereon, and no judgment, nor any appeal or other proceeding to vacate or reverse any judgment, shall have any effect upon registered land as against persons other than the parties

thereto, unless a full memorandum thereof, containing also a reference to the number of certificate of title of the land affected is filed or recorded and registered.

15. HRS § 634–51 provides in relevant part:

In any action concerning real property or affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and any other party at the time of filing a pleading in which affirmative relief is claimed, or at any time afterwards, may record in the bureau of conveyances a notice

*pendens* in the bureau of conveyances to provide constructive notice of the pendency of the action to a future purchaser. Because Knauer filed his *lis pendens* pursuant to HRS §§ 501–151 and 634–51, his *lis pendens* is a statutory lien, not a common law lien. Therefore, the circuit court's jurisdiction to expunge Knauer's *lis pendens* is not derived from HRS chapter 507D because HRS chapter 507D does not apply to statutory liens.

■ Finally, the circuit court has jurisdiction to expunge Knauer's *lis pendens* pursuant to HRS § 501–151, HRS § 501–152, and *TSA International.* HRS § 501–151 (1993),[16] entitled "Pending actions, judgments; recording of notice," provides that notice of pendency of an action filed in state court may be recorded. Upon resolution of an action "or any other disposition," HRS §§ 501–152 (1993)[17] and 501–153 (1993)[18] dictate the process by which such dispositions are registered with the land court. In this case, the defendant's motion was granted by the circuit court. Pursuant to HRS § 501–152, when construed in the context of the entire statute, the defendants were entitled to register the court's disposition, expunging the *lis pendens,* in the land court. This action, by the terms of the statute, expunges the earlier recorded *lis pendens.*

In *TSA International,* the plaintiff-appellant, TSA International, filed a *lis pendens* following a failed land deal in which TSA International and the defendant-appellee, Shimizu Corporation (Shimizu), formed a partnership to develop a hotel and golf course. TSA International brought an action against Shimizu for fraud, breach of fiduciary

duty, fraudulent transfer, and violation of the Racketeer Influenced and Corrupt Organizations Act. *Id.* at 266, 990 P.2d at 736. In conjunction with this suit, TSA International recorded a *lis pendens* in the land court. Shimizu filed a motion for summary judgment as to all claims. The circuit court granted Shimizu's motion. *Id.* at 266, 990 P.2d at 736. After TSA International filed its notice of appeal, the trial court expunged the *lis pendens.*

On appeal, TSA International argued that the trial court lacked jurisdiction to order the expungement because the appeal had already been filed and jurisdiction was transferred to the appellate courts. This court explained that the "trial court retains jurisdiction to determine matters collateral or incidental to the judgment, and may act in aid of the appeal." *Id.* at 265, 990 P.2d at 735. The trial court's order was affirmed. Inasmuch as all of the claims against Shimizu had been resolved in Shimizu's favor, there was no claim to support the *lis pendens.*

Although the more narrow issue, *i.e.,* whether the circuit court had jurisdiction to expunge a *lis pendens* recorded in land court, was not addressed, this court did complete a jurisdictional analysis in the context of whether the circuit court retained jurisdiction to expunge a *lis pendens* filed in land court after the plaintiff-appellant had filed its appeal. The analysis in *TSA International* leads logically to our holding in this case that the circuit court has jurisdiction to expunge a *lis pendens* originally recorded in the land court. In summary, the circuit court has

---

of the pendency of the action.... From and after the time of recording the notice, a person who becomes a purchaser or incumbrancer of the property affected shall be deemed to have constructive notice of the pendency of the action and be bound by any judgment entered therein if the person claims through a party of the action; provided that in the case of registered land, section 501–151 ... shall govern.

16. HRS § 501–151 further provides in relevant part that "[n]otice of the pendency of an action in a United States District Court, as well as a court of the State of Hawaii, may be recorded."

17. HRS § 501–152 provides that "[a]t any time after final judgment in favor of the defendant, or

other disposition of any case in which a memorandum has been registered as provided in section 501–151, a certificate of the clerk stating the manner of the disposal thereof shall be entitled to registration."

18. HRS § 501–153 provides in relevant part:

Whenever in any action affecting registered land, judgment is entered for the plaintiff, except in actions relating to terms of less than one year, the judgment is entitled to registration on presentation of a certificate of the entry thereof from the clerk of the court where the action is pending, to the assistant registrar, who shall enter a memorandum upon the certificate of title of the land to which the judgment relates.

jurisdiction to expunge a *lis pendens* pursuant to HRS § 501–151, HRS § 501–152, and *TSA International,* and thus the circuit court did not err when it asserted jurisdiction over the case.[19]

**C. The circuit court properly granted the Association's motion to expunge the *lis pendens.***

The circuit court properly granted the Association's motion to expunge the *lis pendens* because Knauer's application for *lis pendens* did not seek to obtain title to or possession of real property, and thus was not valid. In *TSA International,* TSA International argued that the *lis pendens* should not have been expunged because it was valid. *Id.* at 265, 990 P.2d at 735. This court concluded that

> a narrow construction of Hawaii's *lis pendens* statute was warranted due to the real potential for abuse of [a] *lis pendens:*
>
> > [T]he practical effect of a recorded *lis pendens* is to render a defendant's property unmarketable and unsuitable as security for a loan. The financial pressure exerted on the property owner may be considerable, forcing him [or her] to settle not due to the merits of the suit but to rid himself [or herself] of the cloud upon his [or her] title. The potential for abuse is obvious.
>
> *S. Utsunomiya,* 75 Haw. at 512, 866 P.2d at 967.

*TSA International,* 92 Hawai'i at 265, 990 P.2d at 735 (alterations in original). Consistent with this narrow construction, this court held that "the application of *lis pendens*

should be limited to actions directly seeking to obtain title to or possession of real property." *Id.* at 265, 990 P.2d at 735 (quoting *S. Utsunomiya,* 75 Haw. at 510, 866 P.2d at 966). In the instant case, Knauer asserted seven claims for relief. He did not attempt to obtain title to or possession of the real property at issue in any of the claims. Based on the face of Knauer's complaint, Knauer's claims did not fall within the narrow confines of the *lis pendens* rule, and thus the circuit court properly expunged the *lis pendens.*

**IV. CONCLUSION**

In conclusion, we affirm the judgment of the first circuit court granting defendant-appellee the Association's motion to expunge the *lis pendens.*

Dissenting Opinion of ACOBA, J.

The germane question decided on appeal is whether the circuit court (the court) had jurisdiction to order expungement of the *lis pendens* that was filed in this case. I do not agree with the majority's holding that: (1) the court had jurisdiction to order expungement of the *lis pendens* from the land court registration system; and (2) the majority's analysis that (a) *TSA Int'l Ltd. v. Shimizu Corp.,* 92 Hawai'i 243, 990 P.2d 713 (1999) and Hawai'i Revised Statutes (HRS) §§ 501–151 (1993) and 501–152 (1993) support its holding, *see* majority opinion at 88, 63 P.3d at 396, and (b) "the [Intermediate Court of Appeals (ICA) in *GGS (HI), Inc. v. New York Diamond, Inc.,* 85 Hawai'i 398, 944 P.2d 1341 (App.1997),] erred when it relied on HRS § 501–196[.]"[1] Majority opinion at 87, 63 P.3d at 395.

---

19. With respect to expunging a *lis pendens,* the dissent incorrectly asserts that "HRS § 501–1 unequivocally grants the forgoing powers to the land court, not the circuit court." *See* dissent at 4. The first paragraph of HRS § 501–1 provides that:

> A court is established, called the land court, which shall have *exclusive original jurisdiction* of all applications for the registration of title to land and easements or rights in land held and possessed in fee simple within the State, with power to hear and determine all questions arising upon such applications, and also have *jurisdiction* over such other questions as may come before it under this chapter, subject to the rights of appeal under this chapter. The proceedings upon the applications shall be

> proceedings in rem against the land, and the decrees shall operate directly on the land and vest and establish title thereto.

HRS § 501–1 (1993) (emphasis added). The plain language of HRS § 501–1 confers on the land court "jurisdiction over such other questions as may come before it under this chapter," such as expunging a *lis pendens,* as opposed to "exclusive original jurisdiction." HRS § 501–1. Because HRS § 501–1 does not confer on the land court exclusive original jurisdiction to expunge a *lis pendens,* it does not preclude the circuit court from taking the same action.

1. The majority's contention that "the ICA [in *GGS*] erred when it relied on HRS § 501–196 to support its holding," is a misstatement. Majority

## I.

The majority misinterprets *TSA Int'l* in broadly concluding that that case held the circuit court has jurisdiction to expunge a *lis pendens* filed in the land court.[2] *See* majority opinion at 88–89, 63 P.3d at 396–397. It is said that "[t]he analysis in *TSA International* [would] lead[] logically to [a] holding in this case that the circuit court has jurisdiction to expunge a *lis pendens* originally recorded in the land court." Majority opinion at 88–89, 63 P.3d at 396–397. With all due respect, this rationale is flawed.

This court in *TSA Int'l* held that the circuit court had jurisdiction to expunge the *lis pendens only* because it retained the power to enforce its own judgment:

> [T]he circuit court's expungement of [plaintiffs-appellants'] *lis pendens* on the [disputed property] *was an exercise of the circuit court's power to enforce its judgment, which was in favor of* [defendants-appellees].

92 Hawai'i at 266, 990 P.2d at 736 (emphasis added). In that case, the defendants moved to expunge the *lis pendens after* prevailing on summary judgments as to all the claims. Hence, in expunging the *lis pendens*, the circuit court was merely "exercis[ing] ... it's power to enforce its judgment." *Id.*

Here, Defendant–Appellee Robert Foote (Defendant)[3] moved in a non-hearing motion to expunge the *lis pendens*. An order granting the non-hearing motion was entered on September 7, 1999. Plaintiff–Appellant Steven Alan Knauer (Plaintiff) appealed that order, claiming that "the First Circuit Court lacked jurisdiction to enter such an order." The appeal is brought pursuant to the collateral order doctrine. To date, final judgment has not been entered on Plaintiff's complaint. Thus, *TSA Int'l* is not authority for the court to expunge the *lis pendens*, inasmuch as

expungement would not be "an exercise of the circuit court's power to enforce its judgment[,]" no final judgment having been entered. *Id.*

## II.

The majority also misapplies HRS §§ 501–151 and 501–152. *See* majority opinion at 88–89, 63 P.3d at 396–397. It is claimed that, pursuant to HRS § 501–152, Defendant "w[as] entitled to register the court's disposition, [granting Defendant's motion to expunge] the *lis pendens*, in the land court." Majority opinion at 88, 63 P.3d at 396. According to the majority, "[t]his action, by the terms of the statute, expunges the earlier recorded *lis pendens*." Majority opinion at 88, 63 P.3d at 396.

### A.

It is helpful to reiterate that there are two separate systems for establishing land title in Hawai'i.

> Hawai'i has two systems for recording title to real property. HRS [c]hapter 502 establishes a bureau of conveyances for recordation of interests in land. HRS [c]hapter 501 ... establishes a land court registration system based upon the Torrens system of land title registration. "Registered land or property" refers to property which has had its title determined and certificate of title issued by the land court. The purpose of the registration system is to conclusively establish title to land through the issuance of a certificate of title[.] ... Thus, the fundamental difference between a certificate of title issued by the land court and a recordation of title at the bureau of conveyances is that a land court certificate of title is "conclusive and unimpeachable" with regard to "all matters contained therein." [*In re Bishop Trust Co.*, 35 Haw. 816, 825 (1941)].

2. The majority concedes that, in *TSA Int'l*, "the more narrow issue, *i.e.*, whether the circuit court had jurisdiction to expunge a *lis pendens* recorded in land court, was not addressed[.]" Majority opinion at 88, 63 P.3d at 396.

3. Hereinafter, "Defendant" refers collectively to all the defendants.

opinion at 87, 63 P.3d at 395. The ICA did not cite solely to HRS § 501–196 for its holding. As the majority concedes, "for [its] conclusion, the ICA cited *Iaea v. Iaea*, 59 Haw. 648, 586 P.2d 1015 (1978) and HRS § 501–196 (1993)." Majority opinion at 86–87, 63 P.3d at 394–395 (footnotes omitted).

*GGS,* 85 Hawai'i at 405, 944 P.2d at 1348 (footnote omitted).

Inasmuch as HRS §§ 501–1, 501–151, and 501–152 are laws *in pari materia,* they must be construed with reference to each other. "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16. Doing so, it is clear that the order expunging the *lis pendens* is within the jurisdiction of the *land court,* not the circuit court.

HRS chapter 501 (1993 & Supp.2001) is titled "Land Court Registration" and relates to land court matters. Under HRS § 501–1, the land court has exclusive jurisdiction over all applications for registration of title to land, authority to determine all questions arising from such applications, and jurisdiction over other questions that may come before the land court under HRS chapter 501.

> A court is established, called the land court, which shall *have exclusive original jurisdiction of all applications for the registration of title to land and easements or rights in land* held and possessed in fee simple within the State, *with power to hear and determine all questions arising upon such applications, and also have jurisdiction over such other questions as may come before it under this chapter,* subject to the rights of appeal under this chapter. The proceedings upon the applications shall be proceedings in rem against the land, and the decrees shall operate directly on the land and vest and establish title thereto.

HRS § 501–1 (1993) (emphases added). Plainly, HRS § 501–1 unequivocally grants the foregoing powers to the land court, not the circuit court. Under HRS § 501–151, a *lis pendens* filed in the land court must be in the form of a "full memorandum" identifying the registered land involved:

> *No* writ of entry, action for partition, or any *action affecting the title to real property* or the use and occupation thereof or the buildings thereon, and no judgment, nor any appeal or other proceeding to vacate or reverse any judgment, *shall have*

*any effect upon registered land as against persons other than the parties thereto, unless a full memorandum thereof,* containing also a reference to the number of certificate of title of the land affected *is filed or recorded and registered.*

(Emphases added). Section 501–152 explains that a certificate reflecting the disposition of any case, *i.e.,* an expungement order, may be registered if the memorandum described in HRS § 501–152, such as a *lis pendens,* has been recorded in the land court:

> At any time after final judgment in favor of the defendant, or other disposition of *any case in which a memorandum has been registered as provided in section 501–151,* a certificate of the clerk stating the manner of the disposal thereof shall be entitled to registration.

(Emphasis added.)

### B.

In this statutory framework, although "[t]he circuit court ha[s] jurisdiction over [a dispute] concern[ing] ... registered land[,]" *Iaea v. Iaea,* 59 Haw. 648, 651, 586 P.2d 1015, 1017 (1978), the circuit court does not have jurisdiction to expunge or order expungement of a memorandum, *i.e.,* a *lis pendens,* from the files and records of the land court. *See id.* HRS §§ 501–151 and 501–152 were apparently in effect when *Iaea* was decided.

In *Iaea,* the plaintiff brought an action in the circuit court to set aside a deed registered in the land court on the ground of forgery. *See id.* The circuit court ruled in favor of the plaintiff and issued a "judgment providing that 'the Assistant Registrar is hereby directed to expunge said deed from the files and records of the Land Court[.]'" *Id.* This court held that that "portion of the judgment ... *is unenforceable by the circuit court* and is set aside." *Id.* (emphasis added). Thus, this court in *Iaea* expressly determined, with apparent knowledge of HRS § 501–1, the specific jurisdiction of the land court and circuit court over matters related to registered land:

> The circuit court had jurisdiction over the subject matter, despite the fact that it concerned *registered land. See* HRS

§ 603–21.7(a)(3). *Cf.* HRS ss 501–151, 501–153, 501–155. However, that portion of the judgment providing that "the Assistant Registrar is hereby directed to expunge said deed from the files and records of the Land Court of Hawaii together with any transfer certificate or certificates of title which may have been issued by the Land Court of Hawaii pursuant to the filing of said Document No. 539838," *is unenforceable by the circuit court and is set aside.*

*Id.* (emphases added).

It is apparent that, in *Iaea*, this court viewed the land court and not the circuit court as having jurisdiction over documents filed in the land court.[4] The majority's determination thus conflicts *directly* with *Iaea* and the construction to be given HRS §§ 501–1, 501–151, and 501–152.

HRS § 501–1 was apparently in effect at the time *Iaea* was decided. Hence, consistent with the statute and *Iaea*, the *lis pendens* affecting the certificate of title registered in the land court may be expunged by a petition to the land court. Plainly, that course best satisfies the separate jurisdiction of the land court and its obligation under HRS chapter 501 to uniformly administer land court registration procedures and records.

### III.

### A.

Contrary to the majority's position, *GGS* was correctly decided based on *Iaea*. In *GGS*, the appellees filed a breach of contract suit against the appellant's predecessor-in-interest. *See* 85 Hawai'i at 401, 944 P.2d at 1344. After serving their complaint, the appellees recorded a *lis pendens* in the land court against the property in dispute. *See id.* Subsequently, the property was con-

veyed to the appellant, but it was not recorded until almost five months later. *See id.* Thereafter, the appellees recorded a supplemental *lis pendens* in the land court. *See id.* After the circuit court entered a "stipulated judgment" and order in the breach of contract action, the appellees recorded the stipulated judgment in the land court. *See id.* Later, the parties in the breach of contract action filed a stipulation which dismissed all of the remaining claims in the lawsuit. *See id.*

About six months later, the appellant filed motions in the breach of contract action to vacate the *lis pendens*, supplemental *lis pendens*, and stipulated judgment and order and to expunge them from its land court certificate of title to the disputed property. *See id.* The ICA, relying on *Iaea*, concluded that "the circuit court did not have jurisdiction to order that the *lis pendens*, supplemental *lis pendens*, or stipulated judgment and order be expunged." *Id.* at 406, 944 P.2d at 1349. *GGS* thus held that "the circuit court does not have jurisdiction to. expunge matters from a certificate of title or to order the land court to do so." *Id.* (citing *Iaea*, 59 Haw. at 651, 586 P.2d at 1017). The foregoing proposition from *Iaea* bound the ICA in *GGS*.

### B.

The majority also maintains that, "the ICA [in *GGS*] erred when it relied on HRS § 501–196 to support its holding … that only the land court can expunge a *lis pendens*[.]" Majority opinion at 87, 63 P.3d at 395. However, what the ICA referred to in *GGS* in stating that "HRS § 501–196 sets forth the procedure for amending or altering a certificate of title[,]" 85 Hawai'i at 406, 944 P.2d at 1349, was that portion of the section allowing a petition to the land court in the event "any error, omission, or mistake was made in entering a certificate or any memo-

---

4. The majority maintains that "*Iaea* stands for the narrow proposition that the circuit court had jurisdiction to hear the subject matter of the dispute, … but that it did not have the jurisdiction to *order* the land court to expunge the deed upon a finding that the signature was forged." Majority opinion at 86, 63 P.3d at 394 (citing *Iaea*, 59 Haw. at 649–50, 586 P.2d at 1016) (emphasis added). As the foregoing quote indi-

cates, the circuit court order in *Iaea* is like that in the instant case. In the instant case, the court ordered that "Plaintiff's Notice of Pendency of Action filed on April 21, 1999 and recorded with the Office of Assistant Registrar of the Land Court, State of Hawaii, as Document No. 2537470 (affecting Transfer Certificate of Title No. 510,455) is hereby *RELEASED*." (Capitalization and underscoring in original.)

randum thereon." *Id.* at 405, 944 P.2d at 1348 (quoting HRS § 501–196). That is because the broad language of HRS § 501–196 (Supp.2001)[5] allows for expungement of a lis pendens by petition to the land court, providing in part that

> [a]ny registered owner or other person in interest may at any time *apply by petition to the [land] court,* upon the ground that registered interests of any description, whether vested, contingent, expectant, or inchoate have terminated and ceased; . . . *or that any error, omission, or mistake was made in entering* a certificate or *any memorandum thereon* [.]

(Emphases added.) *See GGS,* 85 Hawai'i at 405, 944 P.2d at 1348 ("A certificate of title, however, may be amended by the land court when 'any error, omission, or mistake was made in entering a certificate or a memorandum thereon.'" (Citing HRS § 501–196 and *In re Matson Nav. Co.,* 79 Hawai'i 56, 897 P.2d 983 (App.1995))).

Plainly, "the practical effect of a recorded *lis pendens* is to render a defendant's property *unmarketable* and *unusable* as security for a loan." *S. Utsunomiya Enters., Inc. v. Moomuku Country Club,* 75 Haw. 480, 502–03, 866 P.2d 951, 963 (emphases added), *reconsideration denied,* 75 Haw. 480, 866 P.2d 951 (1994). The recordation of an improper *lis pendens* affects the marketability and us-

ability of the property as collateral. Thus, HRS § 501–196 would allow a procedure for remedying the "error . . . or mistake . . . in entering . . . [a] memorandum [of *lis pendens* ]" affecting the certificate of title.

In that regard the *lis pendens* in *GGS* was determined to be invalid. *See GGS,* 85 Hawai'i at 408, 944 P.2d at 1351. Consequently, the ICA decided that the appellant was entitled, in accordance with HRS § 501–196, to "petition the [land] court, upon the ground that . . . an[ ] error . . . or mistake was made in entering" the *lis pendens* and supplemental *lis pendens.* HRS § 501–196.

Bound by HRS § 501–196 and *Iaea,* the ICA in *GGS* was required to apply them, as it did. *See Tamashiro v. Control Specialist, Inc.,* 97 Hawai'i 86, 94, 34 P.3d 16, 24 (2001) (Acoba, J., concurring) (stating that the ICA cannot be faulted for applying the then-existing precedent to which the ICA was bound). The majority, then, is incorrect in its characterization of *GGS,* in light of the controlling authority.

## IV.

In passing, the majority "not[ed] that the ICA's opinion in *GGS* is perplexing because, while" the circuit court is permitted to hear the merits of a "motion to expunge a *lis pendens* and to determine its validity," the circuit court does not have jurisdiction to

---

5. HRS § 501–196, in full text, states that

> [n]o erasure, alteration, or amendment shall be made upon the registration book after the entry of a certificate of title or of a memorandum thereon, and the approval of the same by the registrar or an assistant registrar except by order of the court recorded with the assistant registrar, provided that the registrar or assistant registrar may correct any clerical error made by personnel of the registrar's or assistant registrar's office. Any registered owner or other person in interest may at any time *apply by petition to the court,* upon the ground that registered interests of any description, whether vested, contingent, expectant, or inchoate have terminated and ceased; or that new interests have arisen or been created which do not appear upon the certificate; *or that any error, omission, or mistake was made in entering a certificate or any memorandum thereon;* or that the name of any person on the certificate has been changed; or that the registered owner has been married, or if registered as married that the marriage has been terminated; or that

> a corporation which owned registered land and has been dissolved has not conveyed the same within three years after its dissolution, or upon any other reasonable ground. The court shall have jurisdiction to hear and determine the petition after notice to all parties in interest and may order the entry of a new certificate, the entry or cancellation of a memorandum upon a certificate, or grant any other relief upon such terms and conditions, requiring security if necessary, as it may deem proper. This section shall not be construed to give the court authority to open the original decree of registration, and nothing shall be done or ordered by the court which impairs the title or other interest of a purchaser holding a certificate for value and in good faith, or the purchaser's heirs or assigns, without the purchaser's or their written consent.

> Any petition filed under this section and all petitions and motions filed under this chapter after original registration shall be filed and entitled in the original case in which the decree of registration was entered.

(Emphases added).

expunge the *lis pendens*. Majority opinion at 87, 63 P.3d at 395. The majority's statement misstates the facts. As recounted *supra*, at the time *GGS* was decided, *Iaea* was controlling authority. Bound by *Iaea*, GGS applied it. *See* discussion *supra*, Part III. Hence, *GGS* related to the state of the law as to the recordation of invalid instruments under the land court registration system. Further, the distinction between the jurisdiction of the circuit court and the land court with respect to expungement rests in the dual but separate systems for establishing title to land in this state.

V.

In sum, I do not agree with the majority in its reliance on *TSA Int'l* and HRS §§ 501–151 and 501–152 and its analysis of *GGS*.