JOSE LUIS ANDRADE CANALES and TORITO'S MEXICAN INC. I and TORITO'S MEXICAN INC. II, Plaintiffs-Appellees,
v.
JULIO RODOLFO MELENDEZ ARTIGA, YOSHIMI MAKIMOTO and JULIO'S ACCOUNTANT CORPORATION, Defendants-Appellants, and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; AND DOE GOVERNMENTAL ENTITIES 1-10; Defendants.
No. 28908.
Intermediate Court of Appeals of Hawaii.
July 31, 2009.
On the briefs:
Steven Guttman, Kathy K. Higham, (Kessner Umebayashi Bain & Matsunaga), for Defendants-Appellants.
Robert G. Klein, Lisa M. Ezra, (McCorriston Miller Mukai MacKinnon LLP), for Plaintiffs-Appellees.

MEMORANDUM OPINION
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Defendants-Appellants Julio Rodolfo Melendez Artiga (Artiga), Yoshimi Makimoto (Makimoto), and Julio's Accountant Corporation (JAC) (collectively, the "Defendants") appeal from the interlocutory order denying Defendants' motion to expunge notice of pendency of action (Order Denying Expungement) entered on November 20, 2007, by the Circuit Court of the First Circuit (circuit court).[1] For the reasons set forth below, we vacate the Order Denying Expungement and direct the circuit court to issue an order granting the Defendants' motion to expunge.

I. BACKGROUND
On August 28, 2007, Plaintiffs-Appellees Jose Luis Andrade Canales (Canales) and Torito's Mexican Inc. I and Torito's Mexican Inc. II (collectively, the "Plaintiffs") filed a civil complaint against the Defendants. Canales was the President of the Torito's Mexican Inc. I and Torito's Mexican Inc. II restaurants, and Artiga and JAS had been hired as the Plaintiffs' accountants.
The factual allegations of the complaint can be summarized as follows. Artiga and JAC misused their position as the Plaintiffs' accountants to convert, embezzle, and divert the Plaintiffs' assets for the Defendants' own use and benefit. Artiga and JAS fraudulently used the Plaintiffs' identities to obtain more than nine credit cards, which were used for the Defendants' own benefit. Artiga used cash advances from the credit lines of the fraudulently obtained credit cards to make mortgage payments on real property titled in the names of Artiga and Makimoto and to purchase other goods. Artiga also used counterfeit checks to access the Plaintiffs' bank accounts, to deposit funds into Artiga's personal bank account, and to pay for personal purchases, including mortgage payments.
The Plaintiffs' complaint asserts claims for 1) conversion; 2) unjust enrichment; 3) fraud; 4) conspiracy to defraud; and 5) punitive damages. The Plaintiffs' prayer for relief requests, among other things: 1) special, general, and punitive damages; 2) imposition of a constructive and/or resulting trust in favor of the Plaintiffs over all assets, including real property, allegedly purchased and used by the Defendants, together with a monetary judgment for damages; 3) "[t]itle to and/or possession of any Hawaii real and personal property by and in favor of Plaintiffs or a duly appointed receiver"; and 4) entry of appropriate orders precluding the sale or encumbrance of any Hawai'i real property purportedly owned by Artiga and Makimoto pending the outcome of the litigation.
In connection with the complaint, the Plaintiffs filed a notice of pendency of action (NOPA) with the Land Court and the Bureau of Conveyances with respect to two Honolulu properties titled in Artiga and Makimoto's names as tenants by the entirety: 1) the property located at 7276 Waiopua Street (Property 1) and 2) the property located at 410 Atkinson Drive, #716 (Property 2). The NOPA alleges that Artiga used funds fraudulently obtained from the Plaintiffs to make mortgage payments on Property 1 and Property 2. It further alleges that Artiga and Makimoto obtained a second mortgage on Property 1, the proceeds of which were used by them to acquire Property 2. Property 1 is non-registered land and Property 2 is land-court-registered property.
The Defendants filed a motion to expunge the NOPA (Motion to Expunge), arguing that the complaint did not allege a claim directly concerning real property or affecting title to or possession of real property. The Plaintiffs opposed the Motion to Expunge. The circuit court denied the Defendants' Motion to Expunge by issuing its Order Denying Expungement on November 20, 2007, and the Defendants appealed.
This court initially dismissed the Defendants' appeal for lack of jurisdiction, on the ground that the Order Denying Expungement was not an appealable order under the collateral order doctrine. See Canales v. Artiga, No. 28908, 2008 WL 2316308 (Hawai'i App. June 2, 2008). The Hawai'i Supreme Court granted certiorari and disagreed with our analysis. On September 19, 2008, the supreme court filed its opinion holding that the Order Denying Expungement "is a collateral order that is immediately appealable as a final order pursuant to Hawai'i Revised Statutes § 641-1(a) (Supp. 2007)." Canales v. Artiga, 118 Hawai'i 421, 422, 192 P.3d 610, 611 (2008). Accordingly, the supreme court vacated this court's dismissal order and remanded the appeal back to us for disposition on the merits.

II. DISCUSSION
On appeal, the Defendants assert that the essence of the Plaintiffs' complaint is an action to recover monetary damages. The Defendants contend that with respect to real property, the Plaintiffs' complaint "at best asserts an equitable claim which, upon an entry of judgment, could result in an equitable lien against real property owned by Defendants." The Defendants argue that based on the Hawai'i Supreme Court's decision in S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club, 75 Haw. 480, 866 P.2d 951 (1994), the Plaintiffs' complaint is insufficient to support the filing of an NOPA and the circuit court erred in denying Defendants' Motion to Expunge.
We review a trial court's railing on whether an NOPA should be expunged for abuse of discretion. S. Utsunomiya, 75 Haw. at 504, 866 P.2d at 964. We conclude that under Utsunomiya, the circuit court abused its discretion in denying Defendants' Motion to Expunge.

A.
In Hawai'i, the filing of an NOPA or lis pendens[2] is governed by statutes which codify the doctrine of lis pendens. Lathrop v. Sakatani, 111 Hawai'i 307, 310 n.1, 41 P.3d 480, 483 n.1 (2006); Knauer v. Foote, 101 Hawai'i 81, 83 n.1, 63 P.3d 389, 391 n.1 (2003). Hawaii Revised Statutes (HRS) § 634-51 (Supp. 2008), which applies to non-registered land, provides:
Recording of notice of pendency of action. In any action concerning real property or affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and any other party at the time of filing a pleading in which affirmative relief is claimed, or at any time afterwards, may record in the bureau of conveyances a notice of the pendency of the action, containing the names or designations of the parties, as set out in the summons or pleading, the object of the action or claim for affirmative relief, and a description of the property affected thereby. From and after the time of recording the notice, a person who becomes a purchaser or incumbrancer of the property affected shall be deemed to have constructive notice of the pendency of the action and be bound by any judgment entered therein if the person claims through a party to the action; provided that in the case of registered land, section 501-151 and sections 501-241 to 501-248 shall govern.
This section authorizes the recording of a notice of the pendency of an action in a United States District Court, as well as a state court.
(Emphasis added.)
HRS § 501-151 (2006), which applies to land-court-registered property, similarly authorizes the filing of a lis pendens against registered land for actions "affecting the title to real property or the use and occupation thereof or the buildings thereon[.]" The Hawai'i Supreme Court has construed the two lis pendens statutes as essentially imposing the same requirements for filing a lis pendens. See Knauer, 101 Hawai'i at 87-89, 63 P.3d at 395-97.

B.
Under HRS § 634-51, "a lis pendens may only be filed in connection with an action (1) `concerning real property,' (2) `affecting title' to real property, or (3) `affecting the right of possession of real property.'" S. Utsunomiya, 75 Haw. at 505, 866 P.2d at 964 (citation and ellipsis omitted). "In determining the validity of a lis pendens, courts have generally restricted their review to the face of the complaint" and have held that "the likelihood of success on the merits is irrelevant." Id.
In S. Utsunomiya, the court considered whether under HRS § 634-51, a lis pendens could properly be filed against real property based on a complaint alleging an equitable lien against the property. Id. at 507, 866 P.2d at 965. The relevant factual background of S. Utsunomiya is as follows. Utsunomiya paid Moomuku a $200,000 deposit for the purchase of real property. Id. at 485, 866 P.2d at 956. This sale was not consummated and Utsunomiya filed an amended complaint to recover the deposit, alleging that it had a lien on Moomuku's interest in the property to the extent of the $200,000 deposit. Id. at 487, 866 P.2d at 957. Utsunomiya also filed an amended lis pendens on the property based on the amended complaint. Id. A third-party, JGP, which had contracted to purchase the property from Moomuku, intervened in the lawsuit and moved to expunge Utsunomiya's lis pendens. Id. at 489, 866 P.2d at 957-58. One of the issues on appeal was whether the circuit court erred in denying JGP's motion to expunge.
After surveying the historical context for the enactment of HRS § 634-51, the Hawai'i Supreme Court concluded that "the lis pendens statute must be strictly construed and that the application of lis pendens should be limited to actions directly seeking to obtain title to or possession of real property." Id. at 510, 866 P.2d at 966. The court cited conflicting decisions of the California courts of appeal regarding the proper scope of California's lis pendens statute and adopted the reasoning of Urez Corp. v. Superior Court, 235 Cal. Rptr. 837 (Cal. Ct. App. 1987), which opted for a narrow construction of the statute. S. Utsunomiya, 75 Haw. at 512, 866 P.2d at 967.
The Hawai'i Supreme Court cited with approval the analysis used by the Urez court in holding that the complaint in Urez did not support the filing of a lis pendens:
In holding that the lis pendens should have been expunged, the California Court of Appeals reviewed the history of the doctrine of lis pendens and then turned to the complaint, observing that the claims for relief at issue were
essentially a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien. Plaintiff does not claim any ownership or possessory interest in the subject property. Rather, he seeks reinstatement or creation of a "beneficial" interest in the property for the purpose of securing payment of money owed him under his defunct second trust deed.
(Urez, 190 Cal. App. 3d] at 1149, 235 Cal. Rptr. at 842. The court concluded:
. . . . At bottom, the "beneficial" interest plaintiff claims in the subject property is for the purpose of securing a claim for money damages. In our view, allegation of this interest is not an action affecting title or possession of real property.
We conclude, therefore, that allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages. It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage for negotiating purposes.
Id. at 1149, 235 Cal. Rptr. at 842-43 (emphasis added).
S. Utsunomiya, 75 Haw. at 511-12, 866 P.2d at 966-67 (emphasis in original) (brackets omitted).
The Hawai`i Supreme Court stated:
We find the discussion in Urez to be well-reasoned and therefore adopt it here. Such a narrow construction of Hawai'i's lis pendens statute is counseled by sound authority recognizing the real potential for abuse of lis pendens.

Id. at 512, 866 P.2d at 967. The supreme court further noted with approval the following observation of another court:
[T]he practical effect of a recorded lis pendens is to render a defendant's property unmarketable and unsuitable as security for a loan. The financial pressure exerted on the property owner may be considerable, forcing him to settle not due to the merits of the suit but to rid himself of the cloud upon his title. The potential for abuse is obvious.
Id. (quoting La Paglia v. Superior Court, 264 Cal. Rptr. 63, 66 (Cal. Ct. App. 1989)).
In applying its construction of HRS § 634-51 to the facts presented in S. Utsunomiya, the Hawai'i Supreme Court held:
A fair reading of Utsunomiya's amended complaint reveals that it is predominantly a fraud and breach of contract complaint (obviously amended to allege an equitable lien) seeking damages. We agree with Moomuku that Utsunomiya does not claim title to or a right of possession of the property. Thus, HRS § 634-51 is not implicated and Utsunomiya's amended lis pendens should have been expunged. The circuit court abused its discretion in failing to do so.
Id. at 513, 866 P.2d at 967.

C.
Applying the reasoning of S. Utsunomiya, we conclude that Plaintiffs' complaint, when fairly read, is "predominantly" a fraud complaint seeking damages for Defendants' alleged use of fraud to steal money from Plaintiffs. Plaintiffs seek a constructive trust over Defendants' real property as a collateral means of securing the repayment of money that Plaintiffs claim was fraudulently obtained and used by Defendants. As alleged in the complaint, the fraudulent acts committed by Defendants were directed at stealing Plaintiffs' money; they were not committed in a dispute over real property. Under the circumstances of this case, Plaintiffs' request for the equitable remedy of a constructive trust over Defendants' real property is insufficient to convert Plaintiffs' complaint into an action "directly seeking to obtain title to or possession of real property." Id. at 510, 866 P.2d at 966.
Our conclusion is supported by California courts which have followed the reasoning of Urez and held that a lis pendens could not be filed based on a claim that funds fraudulently or wrongfully obtained could be traced to expenditures on real property. See Campbell v. Superior Court, 34 Cal. Rptr. 3d 68, 78-79 (Cal. Ct. App. 2005) (concluding that a lis pendens could not be recorded on a complaint seeking an equitable lien based on plaintiff's claim that funds wrongfully obtained through the exertion of undue influence were used to remodel defendant's property); Lewis v. Superior Court, 37 Cal. Rptr. 2d 63, 71-72 (Cal. Ct. App. 1994) (concluding that the filing of a lis pendens was not warranted based on allegations that a real property owner had used money misappropriated from others to buy the real property and stating that "[t]he fact that someone buys property with stolen money does not make the victim the owner of that property as a matter of real property law").

D.
The Plaintiffs claim that S. Utsunomiya is distinguishable because unlike in S. Utsunomiya, their complaint specifically requests title to and/or possession of the Defendants' real properties based on allegations that the Defendants used funds fraudulently obtained from the Plaintiffs to make mortgage payments on and improvements to the Defendants' properties. We disagree.
We read S. Utsunomiya as implicitly rejecting the Plaintiffs' contention that a lis pendens can be supported by a complaint seeking a constructive trust over real property based on the alleged ability to trace fraudulently obtained funds to the real property.
In S. Utsunomiya, 75 Haw. at 512, 866 P.2d at 967, the Hawai'i Supreme Court noted that the Urez court had "declined to follow two other much criticized California Court of Appeal cases," one of which was Coppinger v. Superior Court, 185 Cal. Rptr. 24 (Cal. Ct. App. 1982). The plaintiff in Coppinger claimed that she had been fraudulently induced to purchase a home from the defendants and sued for compensatory and punitive damages. Coppinger, 185 Cal Rptr. at 26. As an alternative remedy, the plaintiff sought to impose a constructive trust on a new residence the defendants had purchased on the theory that it had been purchased with funds the plaintiff had paid to buy the defendants' old residence. Id. at 26, 28. The plaintiff filed a lis pendens on the defendants' new residence. Id. The Coppinger court concluded that the plaintiff's action to impose a constructive trust on real property was sufficient to support the filing of a lis pendens. Id. at 29.
In Urez, the court rejected "[Coppinger's] broad definition of actions which affect title or possession of real property." Urez, 235 Cal. Rptr. at 842. By adopting the reasoning of Urez in S. Utsunomiya, the Hawai'i Supreme Court signaled its implicit rejection of Coppinger's conclusion that a request for a constructive trust based on the use of fraudulently obtained funds to purchase real property is sufficient to justify the filing of a lis pendens. Thus, we cannot accept Plaintiffs' claim that S. Utsunomiya is distinguishable because their complaint alleges that Defendants used the fraudulently obtained funds to make mortgage and other payments affecting Defendants' real property.
We also reject Plaintiffs' attempt to distinguish S. Utsunomiya based on their request for title to and/or possession of Defendants' real properties. In S. Utsunomiya, the supreme court cited the "real potential for abuse of lis pendens" in support of its narrow construction of HRS § 634-51 and its decision to limit "the application of lis pendens ... to actions directly seeking to obtain title to or possession of real property." S. Utsunomiya, 75 Haw. at 510, 512, 866 P.2d at 966, 967. The court adopted the view that "allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages," Id. at 511, 866 P.2d at 966.
Consistent with the supreme court's analysis in S. Utsunomiya, we conclude that the simple expedient of including a request for title to or possession of real property in a prayer for relief cannot change the essential character of a complaint or automatically authorize the filing of a lis pendens. A contrary rule would undermine the supreme court's narrow reading of the lis pendens statute to protect against abuse. As we have already concluded, a fair reading of Plaintiffs' complaint reveals that it is essentially an action to recover damages that requests the imposition of a constructive trust on Defendants' real and personal properties, as an equitable remedy, to secure payment of those damages. As such, it is not an action "directly seeking to obtain title to or possession of real property." Id. at 510, 866 P.2d at 966.

III. CONCLUSION
We vacate the circuit court's November 20, 2007, Order Denying Expungement, and we remand the case with instructions that the circuit court issue an order granting the Defendants' Motion to Expunge.
NOTES
[1] The Honorable Gary W.B. Chang presided.
[2] The Hawai'i Supreme Court has used the terms "notice of pendency of action" (NOPA) and "lis pendens" interchangeably, and we will do likewise in this Memorandum Opinion. See S. Utsunomiya, 75 Haw. at 488 n.4, 866 P.2d at 957 n.4.